**DANFORTH v. NORTHILL CO., Inc., et al.**

**NORTHILL CO., Inc., et al. v. DANFORTH.**

**No. 10358.**

Circuit Court of Appeals, Ninth Circuit.

April 11, 1944.

Rehearing Denied June 16, 1944.

A. W. Boyken and Robert H. Eckhoff, both of San Francisco, Cal., for appellant R. S. Danforth.

R. Welton Whann and Robt. M. Mc-Manigal, both of Los Angeles, Cal., James M. Naylor, of San Francisco, Cal., for appellants Northill Co. et al.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a suit for infringement of a patent for an anchor. The trial court held the patent valid but not infringed, and both the plaintiffs and the defendant have appealed.

Plaintiffs' patented device is referred to in the record as the Northill anchor and the defendant's device as the Danforth anchor.

The patent in suit, No. 2,075,827, was issued to plaintiffs Northrop and Gesner on April 6, 1937, and the patentees obtained a reissue of the same patent (Re. No. 21,841) under date of June 24, 1941. The suit was voluntarily dismissed as to the original patent, and sole reliance was thenceforth placed on the reissue. The defendant contends that the reissue patent is invalid for want of invention and because broader than the original, and also because of laches; but we do not reach these questions since we are of opinion that the finding of non-infringement should be upheld.

Plaintiffs' patent is for an anchor for use on various water craft, chiefly pleasure boats, seaplanes and the like. The anchor apparently has a high ratio of holding power to weight, which is the prime advantage claimed for it by the inventors. It has a shank, a cable attachment at one end of the shank, a fluke or flukes carried by fluke arms extending outwardly from the opposite end of the shank, and a cross-arm or stock extending outwardly from the point where the fluke arms are attached to the shank. The invention is said to reside in the arrangement of the fluke with respect to the point of cable attachment. Certain angular relationships are referred to in the reissue patent as essential, these angles being dependent on a definite relationship between the lengths of the shank, fluke arms, and flukes. The angles are denominated the presentation angle, the planing angle, and the fluke angle. In order that the fluke may "plane" into bottom substantially independent of weight, it is said that the presentation angle must be approximately 60°, the planing angle approximately 45°, and the fluke angle approximately 25°.

The trial court found that none of the Danforth anchors embody the features disclosed or claimed in the reissue patent; that the Northill anchor, made in accordance with the disclosure in the reissue patent, is a folding "Kedge" type anchor with fixed fluke arms, whereas the Danforth anchors are "Navy" type anchors with pivoted fluke arms; that plaintiffs' reissue patent is merely for an improvement, and that there is a substantial difference between plaintiffs' invention and the accused Danforth anchors.

The anchor art, dating as it does from the advent of ships, is an old and crowded art. There is obviously no patentable novelty in the mere lightness of an an-

chor. The prior art contains examples of light anchors the very high holding power of which is attested by competent witnesses who had occasion to observe their performance. Earlier types of anchors are in evidence having the capacity to bury themselves readily. Their efficiency in this respect is not explainable on the mere theory of weight. There are examples in the prior art of anchors whose significant angles very closely approach those named in the patent in suit, as do those of the accused Danforth anchors. We do not mean to intimate that the plaintiffs taught nothing in respect of scientific angular relationships in anchor design, but we are not persuaded that the improvement evidenced by their patent was of such magnitude as to entitle the patentees to a broad range of equivalents. Magnavox Co. v. Hart & Reno, 9 Cir., 73 F.2d 433, 435; Thomas Day Co. v. Doble Laboratories, 9 Cir., 42 F.2d 6; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

Aside from angular relationships, the accused anchors differ from the Northill anchor substantially in construction and appearance. The Northill anchor, as described in the reissue patent and as actually manufactured, is of the old Kedge type. The flukes are positioned on opposite sides of the shank, and in the exhibits before us fluke arm and fluke, as well as the two arms of the stock, may be folded against the shank for convenience in stowage. When the fluke arms are unfolded and locked in place, preparatory to use, the arms and flukes are in a rigid position.

The Danforth anchors, on the other hand, are of the modern type, known as "Navy" anchors. The term "Navy" anchor has reference to anchors having a hinge at the base of the shank, on which hinge the flukes swing loosely in an arc passing through the axis of the shank. The flukes may drop on either side of the shank, depending on which side happens to be undermost, and their rearward swing may be halted in the desired position by a stop arrangement on the arm. Necessarily the two flukes operate together on the same side of the shank. Necessarily, also, they are not directly beneath the shank as is the fluke in the Northill anchor.

Nor is the mode of operation the same. When the Northill anchor is ready for use, its flukes, as we have said, are rigidly positioned on opposite sides of the shank.

Upon reaching the bottom the anchor takes a three-point position, resting on the cable end of the shank, the end of one fluke, and one end of the stock or cross-arm. As the forward movement of the cable is applied and the fluke point begins to penetrate the bottom, the anchor rotates slowly until the fluke is directly below the shank. When the Danforth anchor reaches the bottom, the flukes, stock and shank rest flat on the ground. As the cable is pulled the flukes engage the ground and swing outward gradually until fully open, that is to say, open as far as the stop on the fluke arm permits them to go. While it is contended that the Danforth anchor jumps from collapsed position immediately upon the flukes' being engaged, there is evidence to the contrary.

We agree with the trial court that the differences in type, construction, and mode of operation are sufficiently substantial to necessitate the holding of noninfringement.

It is unnecessary to rule on validity where noninfringement is found. L. McBrine Co. v. Silverman, 9 Cir., 121 F.2d 181; Schnitzer v. California Corrugated Culvert Co., 9 Cir., 140 F.2d 275.

The judgment is affirmed except that paragraph VI thereof relating to validity is ordered stricken.