**NEFF INSTRUMENT CORPORATION, a Corporation, Appellant,**

v.

**COHU ELECTRONICS, INC., and Neely Enterprises, Appellees.**

**No. 16266.**

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1959.

Robert H. Fraser, Los Angeles, Cal., for appellant.

Lyon & Lyon, Charles G. Lyon, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This was an action for infringement of United States Letters Patent No.

2,832,848 brought by plaintiff Neff Instrument Corporation (hereinafter Neff or appellant) against Cohu Electronics, Inc., and Neely Enterprises (hereinafter Cohu or appellees). The patent in suit covered an electrical signal amplifier patented on April 29, 1958. The complaint alleged that appellees were manufacturing, using and selling a device known to infringe, identified as "Model 114-A amplifiers" or "Kin Tel 114A amplifiers."

Appellees answered that all Model 114A amplifiers had been manufactured and/or sold "for the United States Government within the meaning of Title 28 U.S.C. Section 1498," and that plaintiff-appellant's sole remedy was against the United States in the Court of Claims. Upon a motion for summary judgment filed by appellees on the same ground, which was accompanied by affidavits, and which was opposed by the filing of counter-affidavits, the trial court entered summary judgment dismissing the complaint. Findings of fact and conclusions of law were filed. The court held that "plaintiff's sole remedy under the premises is by action against the United States in the Court of Claims for recovery of its reasonable and entire compensation for such use and compensation." [sic] (Conclusions of Law II.)

Jurisdiction in the district court was founded upon 28 U.S.C. §§ 1338(a) and 1400(b). Timely notice of appeal was filed, and this Court has jurisdiction by virtue of 28 U.S.C. § 1291.

■ The sole legal issue is whether there was a single, genuine issue of material fact before the district court when it granted summary judgment. If there was, the summary judgment was improperly granted. Cee-Bee Chemical Co., Inc. v. Delco Chemicals, Inc., 9 Cir., 1958, 263 F.2d 150; Fed.R.Civ.P. 56(c), 28 U.S.C.

■ Plaintiff appeals, contending (a) there existed several issues as to material facts; (b) the defendant-appellees' affidavits in support of the motion for summary judgment did not establish as a matter of law that the government had given its authorization or consent to the infringement of the patents; (c) there was evidence clearly establishing non-exempt infringement which could not be disposed of under the theory of de minimis; (d) that the appellees' affidavits supporting the motion for summary judgment were technically deficient, and finally, (e) that the district court committed prejudicial error in certain rulings restricting the use of interrogatories requested by appellant.

The findings of fact made by the trial court with respect to the defense set out in 28 U.S.C. § 1498 are set forth in the margin.[1] And 28 U.S.C. § 1498 reads, in material part, as follows:

"Whenever an invention described in and covered by a patent of the

1. "VI. That the accused device in this case is identified as Cohu Electronics' Amplifier Model 114A.

"VII. That all 114A Cohu Electronics' amplifiers manufactured and sold to date, except in one instance, have been manufactured and sold under specific prime United States Government Contracts.

"VIII. That the United States Government has taken title to all the 114A Cohu Electronics' amplifiers which were sold under the United States Government Contracts.

"IX. That the one instance wherein a 114A Cohu Electronics' amplifier was not manufactured and sold under a separate specific prime United States Government Contract was a sale of a single one of said amplifiers to the Ramo Wooldridge Corporation, of 5500 El Segundo Boulevard, Los Angeles 46, California, pursuant to their purchase order which was placed and confirmed prior to the issuance (on April 29, 1958) of plaintiff's United States Letters Patent No. 2,832,-848.

"X. That the said single one of said amplifiers was returned by The Ramo Wooldridge Corporation to the defendants and a later model 114A amplifier was provided on August 21, 1958.

"XI. That an order for four more of said 114A Cohu Electronics' amplifiers, as well as other items, was placed with the defendants by The Ramo Wooldridge Corporation on or about July 15, 1958.

"XII. That on August 28, 1958, a delivery was made to The Ramo Wooldridge Corporation of only such other items,

United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

"For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States."

In an attempt to bring themselves within this special defense created by 28 U.S.C. § 1498, the defendant-appellees on July 18, 1958, by affidavit listed thirty-two "114A amplifiers" as having been sold. This affidavit was signed by two vice-presidents of Cohu Electronics, Inc., Silberman and Hamilton, each professing "direct knowledge of the sales and deliveries of *all* 114A amplifiers manufactured and sold," [emphasis added] and specifically further stating: "That no 114A amplifiers have been sold to civilians for civilian use, and that all 114A amplifiers sold and delivered have been in connection with use on a specific United States Government prime contract."

It is to be observed that the foregoing affidavit deals only with "114A amplifiers." Subsequent to its filing, the appellant served certain interrogatories on both appellees. These interrogatories sought to determine if defendants had drawn a distinction between the manufacture, use, and sale of "Model 114A amplifiers," of "Kin Tel 114A amplifiers," and of any amplifiers "having similar characteristics to Kin Tel Model 114A amplifiers." They also sought specific information concerning the location and serial numbers of all such amplifiers.

Defendant-appellees objected to answering such interrogatories, charging that their purpose was "to provide information in the nature of a discovery as to damages, despite the fact that there has not yet been established that the patent, which is the basis of this suit, is valid, and that its claims are infringed," and that the interrogatories were "premature" in view of the pending motion for summary judgment.

It seems obvious that for the purposes of the appellees' motion for summary judgment on the special defense, the validity of the patent, and its infringement, were conceded. The sole question on the motion was the controlling applicability of 28 U.S.C. § 1498, which could only be material once infringement and validity of the patent had been assumed. We think the information called for by the interrogatories went far beyond any question of damages, and to the heart of the applicability of § 1498.

Appellees' objections to answering the interrogatories were never passed upon by the trial court. The hearing on the objections was set for the same date as the hearing on the motion for summary judgment. However, on that day the trial court refused to hear the matter of the interrogatories, *assuming* that if non-governmental sales could be proved, they would not exceed five and hence were "not substantial enough to deprive the defendants of the benefit of the statute."[2]

and no delivery has ever been made of the said four more 114A Cohu Electronics' amplifiers.

"XIII. That advertisements and advertising displays of 114A amplifiers made by the defendants do not constitute offers for sale of these amplifiers to the general public."

2. "The affidavits are incomplete, your Honor, and do not resolve all the issues of fact and tell us of all the sales that were made.

"How do we know, your Honor, but what there weren't a lot more sales? We have no way of getting to them. We have asked them to answer some interrogatories, but they just say, 'Oh, no,

The court's refusal to rule on the interrogatories, (particularly in view of the conflicting nature of the affidavits filed in support of the motion for summary judgment, which we later consider) was alone sufficient to prevent a valid conclusion by the court that there was no issue of fact then existing, and was error.

We come to the affidavits in support of and in opposition to the motion for summary judgment.

It might here be noted, parenthetically, that the patented article was not something that could only be used in government contract work, or in defense contracts. It was not part of a missile or plane. It was an article which could be used to advantage by many electronics manufacturing companies in the manufacture of devices that might never be used on a government contract or in connection therewith. As the best evidence of this fact, the equipment in question was advertised for sale to the public in various trade journals (Ex. A to D, inclusive, attached to affidavit of Glyn A. Neff) on several occasions over a five month period beginning before suit was filed.

We have mentioned above the first supporting affidavit, signed July 18, 1958, by Silberman and Hamilton.

On September 11th and 12th, 1958, the next supporting affidavits were filed. They established that the thirty-two amplifiers previously referred to were marked or tagged "as being the property" of the United States, or of the Atomic Energy Commission; that one had been sold directly to the United States Naval Ordnance Department, and an officer of Lockheed Aircraft Corporation swore (as his conclusion) that title to eighteen amplifiers sold to Lockheed was in the United States Government.

On September 12, 1958, affidavits in opposition to the motion were filed by appellant. These disclosed that in addition to the thirty-two 114A amplifiers which the Cohu vice presidents had sworn were the only ones sold, five Kintel Model 114A amplifiers had been purchased by The Ramo-Wooldridge Corporation, one on January 29, 1958 (and the purchase order attached to the affidavit disclosed no reference to any government contract) and four on July 15, 1958 (which purchase order, also attached to the affidavit, likewise disclosed no reference to any government contract). This order was confirmed on July 9, 1958. Other documents attached to the affidavits as exhibits showed that a Model 114A amplifier was received by The Ramo-Wooldridge Corporation on May 26, 1958, and an improved model on August 22, 1958; that the four Model 114A amplifiers purchased by the same company, on July 15, 1958, were confirmed on July 24, 1958.

This affidavit filed by the opponents to the motion also disclosed (a) an additional prototype Kintel Model 114A at the Cohu Electronics company plant; (b) "a portion of a dismantled" structure of still another Model 114A at the same place; (c) that Sandia Corporation had purchased four Kin Tel Model 114A amplifiers, not the three listed in Cohu's list, theretofore submitted, of all thirty-two amplifiers sold (Ex. N attached to said opposition affidavit); and (d) that

we want to answer only on the issue of damages.'

"We want to place the entire thing before the court, and, again, we return to the fact that there has been absolutely no showing of an authorization or consent to the infringement of patents by the Government on any of these sales.

"Certainly, all the communications from the defendant Cohu to Ramo-Wooldridge were available to Mr. Hamilton and Mr. Silberman, and yet they executed false affidavits. How can we believe anything they say?

"The Court: Of course, the Rules, if they raise any question—well, my thought is that even if they sold five, that would not be substantial enough to deprive the defendants of the benefit of the statute, because there must be a substantial amount, and here there are uncontradicted (sic) affidavits that they are all manufactured for a certain purpose, and are used only under contractors."
[Tr. pages 99–100.]

on August 21, 1958, there was on display at the West Coast Electronics Manufacturers' Association trade show still another Kin Tel Model 114A amplifier, which "was placed in operation and demonstrated," and six more amplifiers designated "Kin Tel Model 114A" described as "energized for operation" because "the red indicator lights were illuminated." These amplifiers were advertised for sale to the public by means of an advertising brochure, a copy of which was attached to the affidavit as Exhibit H. This brochure expressed no limitation on sales to the general public.

The integrity of the original supporting affidavit having been sharply questioned, on September 15, 1958, Vice-President Hamilton of appellee Cohu Electronics, Inc. filed a second supporting affidavit. This affidavit admitted that *one* 114A amplifier not mentioned in his previous sworn statement had been sold to The Ramo-Wooldridge Corporation on May 22, 1958; that this was with the understanding *of Cohu* that the amplifier was furnished to Ramo "on behalf and for the benefit of an agency of the United States Government" (no mention is made of Ramo's understanding); that "later" Cohu became aware that Ramo "had no intention of delivering said amplifier Serial No. 1018 to the United States Government," and accordingly, on August 14, 1958, "said amplifier Serial No. 1018 was returned to Cohu." Further, Hamilton swore that Ramo-Wooldridge had "attempted to purchase four other Model 114A amplifiers" from Cohu, and *"has attempted to secure another in place of Serial No. 1018"* [emphasis added]; but that these orders "have not been accepted by Kintel and have not been fulfilled," because such acceptance or fulfillment would have been outside the exemption of § 1498.

One more affidavit opposing the motion for summary judgment was then filed September 19, 1958. It disclosed that two days *after* the second Hamilton affidavit was filed, Robert H. Fraser, counsel for appellant, visited the offices of The Ramo-Wooldridge Corporation and inspected on those premises a Kin Tel Model 114A amplifier "bearing Serial No. 1001, housed in a cabinet to which was attached a Ramo-Wooldridge property tag No. 24–3257, and an inspection certificate." It indicated amplifier No. 1001 was tested and inspected by Cohu on May 12, 1958, the day suit was filed.

Also attached to this affidavit as Exhibit P was a shipping request of The Ramo-Wooldridge Corporation, indicating on its face that a Model 114A amplifier Serial No. 1018 was to be exchanged for a later model. Its date was "8–8–58," to be shipped August 12, 1958. Exhibit Q, also attached as an exhibit, was a Ramo record indicating that the same man who had possession for Ramo-Wooldridge of Model 114A Serial No. 1018 received "an improved Kin Tel Model 114A amplifier on August 21, 1958."

Thus there were beyond question raised for the court's determination disputed facts—the accuracy and honesty of material facts alleged in the affidavits supporting the motion for summary judgment and questioned by the opposing affidavits.

Recognizing that the sale of one Model 114A amplifier to Ramo-Wooldridge, and its use by that company, was clearly established by the evidence below, the district court found there was such a sale, but that it was *de minimis*. In doing this, the court below refused to apply the same rule measuring *de minimis* to the patent defense arising from 28 U.S.C. § 1498, as this Court has heretofore applied to the measurement of *de minimis* in patent infringement.

In Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 1939, 106 F.2d 769, 774, this Court said: "the manufacturing of one machine by the plaintiff would have made plaintiff subject to a suit for infringement regardless of 'use'." And see Northill Co. v. Danforth, D.C.N.D.Cal.1942, 51 F.Supp. 928, affirmed, 9 Cir., 1944, 142 F.2d 51, which held specifically that the *de minimis* rule did not apply to dispose of instances of non-government sales, where 99.41% of the sales were sales to the government

and only .59% of the sales were to civilians.

Here we find not only (1) the manufacture and sale of the machine sold to Ramo-Wooldridge, but (2) the uncontradicted statement of Sandia Corporation that they bought not three but four machines; (3) the existence of seven machines on public display and unrestrictedly offered for sale to the public at the West Coast Electronics Manufacturers' Show; (4) the prototype model at the Cohu factory; and (5) the possible existence of four more "sold" to Ramo-Wooldridge (although these may duplicate the seven in stock mentioned above), which "sale" was overlooked by the trial judge in finding but one sale.

In view of the errors conclusively established in both the original affidavits of Cohu's two vice-presidents, and the subsequent error in the second affidavit filed by one of them, as to the Ramo-Wooldridge "exchange," we cannot look with favor on a lax application of the *de minimis* rule. Instead of 100% sale to the government or to a governmental agency (or even thirty-two out of thirty-three), we have the manufacture and offer to sell of at least ten (and possibly fourteen) devices out of forty-two, a non-governmental sale closer to 25% than 3%.

By the grant of a valid patent, the owner obtains an exclusive right, not only to prevent use by another of his invention, but likewise the making or the selling of the article, in the disjunctive. See 35 U.S.C. § 154. Just as the manufacture of one machine by an infringer is sufficient to make the manufacturer liable, regardless of use or sale, Caterpillar Tractor Co. v. International Harvester Co., supra, so one sale is sufficient. Hutter v. De Q. Bottle Stopper Co., 2 Cir., 1904, 128 F. 283; B. B. Chemical Co. v. Cataract Chemical Co., D.C.W.D.N.Y. 1938, 25 F.Supp. 472, 476. And see, 35 U.S.C. § 271(a).

The mere manufacture of a patented article, without sale, is sufficient to create an infringement. Becton Dickinson &

Co. v. R. P. Scherer Corp., 6 Cir., 1954, 211 F.2d 835, 842; Carter Crume Co. v. American Sales Book Co., C.C.W.D.N.Y. 1903, 124 F. 903, certiorari denied American Sales Book Co. v. Bullivant, 190 U.S. 560, 23 S.Ct. 855, 47 L.Ed. 1184.

And even the threat to use patented subject matter may give a right to a cause of action. See Fehr v. Activated Sludge, Inc., 7 Cir., 1936, 84 F.2d 948, 951. If this be so, how can we view appellees' sales convention appeals, and its numerous paid advertisements (without the slightest indication of any attempt being made to restrict sales to governmental agencies or to private companies with governmental contracts) as other than a threat to manufacture and sell infringing machines?

Counsel for appellees urge that because the law allows sales of infringing machines to the government, or to contractors with the government, demonstrations at trade shows "lead only to sales to contractors of the United States Government *as is the case here*." [Emphasis added.]

But the evidence before us indicates that such is *not* the case here, as we have seen above. Nor can we approve the logic of such an argument.

Here we have a situation where appellees' sworn facts were proved to be in error to at least some degree; and where by refusing to answer interrogatories, and charging that information sought relative to sales went only to the issue of damages and not to the issue of liability (when in fact the number of sales directly affected the lower court's decision as to liability), the defendants foreclosed a full factual inquiry. Yet on this record the district court granted a motion for summary judgment, apparently feeling the moving party had met and sustained its burden.

"On a motion for summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are resolved against him, and his supporting affidavits and

depositions, if any, are carefully scrutinized by the court. * * * On appeal from an order granting a defendant's motion for summary judgment the circuit court of appeals must give the plaintiff the benefit of every doubt." Walling v. Fairmont Creamery Co., 8 Cir., 1943, 139 F.2d 318, 322.

We cannot agree with the lower court's implicit conclusion that no material issue of fact remained before him. We would find error, had such a finding been made.

But here no such broad finding was made below. The court found: "That as to each of the facts hereinafter specifically found, there is no genuine issue." No finding was made that there were no other material facts in issue which were not specifically found upon. See New & Used Auto Sales, Inc. v. Hansen, 9 Cir,. 1957, 245 F.2d 951, 953; Sequoia Union High School Dist. v. United States, 9 Cir., 1957, 245 F.2d 227. See also, Byrnes v. Mutual Life Ins. Co., 9 Cir., 1954, 217 F.2d 497, 500, and cases quoted therein.

■ We affirm the technical rule, sufficient in itself to require reversal in this case, that the court below made no finding that "there is no genuine issue as to any material fact," as the rule requires before a summary judgment may be granted.

We need not pass upon appellant's position that appellees' affidavits failed to meet the requirements of Rule 56(e), in either of two particulars. Holding, as we do, that there must be a reversal and a trial of the issues, any defects in the affidavits supporting the motion for summary judgment are immaterial at this time.

Neither do we reach the question of the necessity and the means of showing the authorization or consent of the government to the use and manufacture of the patented article or machine. Again, this facet can be developed at the trial, and undoubtedly with more certainty than the mere affidavit of an interested party that the amplifiers had been sold and delivered "in connection with" government prime contracts. Whether such authorization or consent exists, either specifically or impliedly, is a genuine issue of material fact.

The judgment is reversed, and the case is remanded to the district court for trial on the merits.