**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEANNE NOLAN,
          *Plaintiff-Appellant,*

          v.

HEALD COLLEGE, a California
corporation; HEALD COLLEGE
LONGTERM DISABILITY PLAN;
METROPOLITAN LIFE INSURANCE
COMPANY, a New York
corporation,
          *Defendants-Appellees.*

No. 07-15679

D.C. No.
CV-05-03399-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
November 20, 2008—San Francisco, California

Filed January 13, 2009

Before: Ferdinand F. Fernandez, Thomas G. Nelson and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge T.G. Nelson

477

**COUNSEL**

Geoffrey V. White, Law Office of Geoffrey V. White, San Francisco, California, and Cassie Springer-Sullivan, Oakland, California, for the plaintiff-appellant.

Rebecca A. Hull, Sedgwick, Detert, Moran & Arnold LLP, San Francisco, California, for the defendants-appellees.

**OPINION**

T.G. NELSON, Circuit Judge:

After suffering injuries in a work-place fall, Jeanne Nolan (Nolan) applied for and received long-term disability benefits from Metropolitan Life Insurance Company (MetLife). After paying benefits for approximately two years, however, MetLife reviewed Nolan's file in June 2004 and determined that Nolan no longer qualified for benefits. Nolan twice appealed the decision, but MetLife denied both appeals in reliance on two independent physician opinions that MetLife had requested from Network Medical Review. Nolan thereafter filed this action under the Employee Retirement Income Security Act of 1974 (ERISA). The district court granted summary judgment in favor of MetLife, concluding that the abuse of discretion standard tempered with no skepticism

applied, and that MetLife did not abuse its discretion in denying benefits.

As permitted by *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006), Nolan submitted evidence outside of the administrative record at summary judgment. The evidence bore on MetLife's structural conflict of interest, and more specifically, suggested that Drs. Silver and Jares—the opinions of whom MetLife relied on to deny benefits—were biased in favor of MetLife. In examining the evidence, however, the district court did not apply the traditional rules of summary judgment and/or view that evidence in the light most favorable to Nolan.

We conclude that a district court must apply the traditional rules of summary judgment when examining evidence outside of the administrative record in an ERISA case, including the requirement that the evidence must be viewed in the light most favorable to the non-moving party. As the district court failed to apply the traditional rules of summary judgment in examining Nolan's evidence, we reverse and remand for further proceedings.

## I. BACKGROUND

### A. The Plan

In January 2002, Appellee Heald College purchased a group long-term disability insurance plan (the Plan) from MetLife. The Plan granted MetLife broad discretion to both interpret relevant Plan provisions and to determine eligibility for benefits. Specifically, the Plan provided that "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract. This includes the Group Policy, Certificate and any Amendments." In addition, the Plan stated:

**Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**

In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries[1] shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Footnote added).

## B.   The Injury

While serving as the executive director of Heald College in April 2002, Nolan tripped on a mat at work, fell, and suffered serious injuries to her wrist and back. Nolan immediately saw Dr. Dominic Tse, who diagnosed a fractured wrist and an acute compression fracture of the lumbar spine. One month later Dr. Tse stated that Nolan was making good progress and released her to work with some restrictions. Tse thereafter treated Nolan for approximately eight months, during which time he determined that Nolan was unable to work. As a result of the work-place injuries, MetLife approved long-term disability benefits for Nolan, and began sending monthly payments beginning in August 2002.

In January 2003, Nolan began seeing Dr. Robert Minkowsky for her injuries. Like Tse, Minkowsky determined that Nolan was unable to work. During this time, MetLife continued to make disability payments, and encouraged Nolan to apply for Social Security benefits, which she was granted

---

[1] "A 'fiduciary' is an entity with 'any discretionary authority' in the 'administration of' an ERISA plan." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866 (9th Cir. 2008) (citing 29 U.S.C. § 1002(21)(A)). It is undisputed that MetLife is a fiduciary in this case.

in May 2003. MetLife concluded during an internal review of Nolan's file that it was doubtful that Nolan would be able to return to work due to the severity of the pain she was reporting.

The Plan defined "disabled" differently twenty-four months after a disabling injury. Accordingly, in March 2004, MetLife instructed Nolan to fill out paperwork and to refer physical capacity evaluation forms to her treating physicians as part of MetLife's disability determination. Nolan complied. Thereafter, on June 16, 2004, MetLife determined that Nolan was not eligible for continued benefits on the ground that Nolan's injuries were subject to a twenty-four month Plan limitation for neuromusculoskeletal disorders.

## C. Administrative Appeals

Nolan appealed MetLife's disability determination, and submitted additional medical reports from treating physicians Tse, Minkowsky, and Dr. William Anderson showing that Nolan's injuries were not subject to the twenty-four month limitation. MetLife, in turn, submitted Nolan's file to Dr. Silver of Network Medical Review. Silver concluded that Nolan was not disabled (i.e., she was capable of working in a sedentary environment) and that her injuries were subject to the twenty-four month limitation for neuromusculoskeletal disorders. Relying heavily on Silver's findings, MetLife denied Nolan's appeal on the dual grounds that Nolan was not disabled and her injuries were subject to the twenty-four month benefits limitation.

Nolan appealed for a second time, contending that there was overwhelming evidence that her injuries were not subject to the twenty-four month limitation and that she was unable to work in a sedentary capacity.[2] The evidence included multi-

---

[2]Nolan also complained that MetLife improperly and unfairly included new grounds for denying benefits in response to her appeal, namely, MetLife's new conclusion that Nolan was capable of performing sedentary work.

ple diagnoses of radiculopathies (injuries that were not subject to the Plan's twenty-four month limitation) and her treating physicians' opinions that she was unable to perform sedentary work due to injuries and pain. Once again MetLife referred Nolan's file to a Network Medical Review physician for review—this time Dr. Joseph Jares. Jares, like Silver, disagreed with Nolan's treating physicians and concluded that Nolan was capable of sedentary work. With respect to the Plan's twenty-four month benefits limitation however, Jares ultimately concluded that there was objective evidence indicating that Nolan's injuries were not subject to the twenty-four month limitation.

Relying on the opinions of Drs. Jares and Silver, MetLife denied Nolan's second appeal. While MetLife "reversed" itself by conceding that Nolan's injuries were not subject to the Plan's twenty-four month benefits limitation for neuro-musculoskeletal disorders, it nevertheless denied benefits on the ground that there was insufficient evidence that Nolan was unable to perform sedentary work.

## D.   District Court Proceedings

On September 8, 2005, Nolan filed an ERISA complaint in federal district court for disability benefits and breach of fiduciary duty against MetLife, Heald College, and the Heald College Long-Term Disability Plan. After discovery, the parties filed cross-motions for summary judgment on the administrative record. Importantly, Nolan submitted evidence outside of the administrative record to support her motion for summary judgment and her opposition to MetLife's cross-motion. This evidence indicated that Network Medical Review, Dr. Silver, and Dr. Jares received substantial work and monies from MetLife in the three-to-four years preceding and including Nolan's benefits denial.[3] The district court accepted and considered the evidence.

---

[3]According to Network Medical Review's President and Chief Executive Officer, from 2002 through at least 2005, Network Medical Review

In November 2006, the district court denied Nolan's motion for summary judgment and granted MetLife's cross-motion for summary judgment. The district court concluded that the Plan unambiguously conferred discretion upon MetLife to interpret the Plan and determine eligibility for benefits. The district court appears to have recognized that because MetLife operated under a structural conflict of interest, *Abatie* required the court to consider whether the abuse of discretion standard should be tempered with skepticism. *See Abatie*, 458 F.3d at 968-69. However, the district court concluded that the traditional rules of summary judgment did not apply in examining the evidence,[4] rejected Nolan's evidence of bias on the grounds that the evidence did not "demonstrate a prima facie case of misconduct," and determined that the abuse of discretion standard tempered with no skepticism applied. Thereafter, the district court concluded that MetLife did not abuse its discretion in denying benefits to Nolan because it was entitled to rely on the opinions of Drs. Jares and Silver that Nolan's injuries were subject to the twenty-four month benefits limitation and that she could perform sedentary work.

---

and MetLife had a "business relationship . . . whereby MetLife engaged [the] services of [Network Medical Review] to obtain independent medical opinions on the medical conditions of individuals seeking benefits under MetLife disability insurance policies." The evidence indicates that MetLife paid Network Medical Review $236,490 in 2002, $569,795 in 2003, $838,265 in 2004, and $1,671,605 in 2005 for these independent medical opinions. By 2005, 25.62% of Network Medical Review's gross income was attributable to payments from MetLife. Dr. Jares performed 352 medical reviews for MetLife in 2005 and received at least $37,050 for those services. Jares derived 30% of his 2005 income from doing independent medical reviews for Network Medical Review. Dr. Silver performed 98 medical reviews for MetLife in 2005, and roughly 82% of his time was spent performing independent medical reviews for Network Medical Review, for which he was paid $75,945.

[4]For this proposition, the district court cited *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Nolan moved to alter or amend the district court's order, and on March 21, 2007, the district court denied the motion. The district court conceded that it wrongly upheld MetLife's decision on the ground that Nolan's injuries were subject to the Plan's twenty-four month benefits limitation. However, the court determined that MetLife's decision to deny benefits on the ground that Nolan could perform sedentary work was not an abuse of discretion. The court further concluded that it "properly weighed" the evidence of bias by "consider[ing]" evidence offered by both parties and "assign[ing] weight" to the opinions of Drs. Silver and Jares.

## II.   STANDARDS OF REVIEW

We review de novo a district court's grant of a motion for summary judgment. *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002). We also review de novo "a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Abatie*, 458 F.3d at 962.

## III.    DISCUSSION

The Plan at issue in this case included broad language granting Metlife discretionary authority to both interpret the Plan and determine eligibility for benefits. We determined nearly identical language unambiguously conferred discretionary authority to administer benefits upon MetLife in *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 866-67 (9th Cir. 2008), and we conclude the same here: the Heald College Long-Term Disability Plan "unambiguously confers discretionary authority on MetLife to administer benefits claims." *Id*. at 867.

### A.   Defining the Contours of the Abuse of Discretion Standard

Where an ERISA plan confers discretionary authority upon a plan administrator to determine eligibility for benefits, we

generally review the administrator's decision to deny benefits for an abuse of discretion. *Abatie*, 458 F.3d at 963 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, as the parties agree that MetLife operates under a structural conflict of interest as an entity that both determines eligibility for benefits and pays benefits awards, the precise standard of review in this case requires our consideration of *Abatie*, 458 F.3d 955, and the recent United States Supreme Court opinion in *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008) (*MetLife*).

**[1]** Where a plan administrator operates under a conflict of interest—in this case, a structural conflict—a court must weigh the conflict " '*as a factor* in determining whether there is an abuse of discretion.' " *MetLife*, 128 S. Ct. at 2348 (citing *Firestone*, 489 U.S. at 115) (emphasis in original). As noted in *Abatie*, consideration of the conflict can "affect judicial review," and a court is required to consider the conflict whenever it exists, and to temper the abuse of discretion standard with skepticism "commensurate" with the conflict. 458 F.3d at 959, 965, 969. In considering how much or how little to temper the abuse of discretion standard in a case such as the one before us, *Abatie* further clarified that a district court could "consider evidence outside the administrative record" to decide the conflict's "nature, extent, and effect on the decision-making process." 458 F.3d at 970; *see Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir. 2008). Accordingly, while the abuse of discretion standard generally applies in cases where plan administrators have discretionary authority to determine eligibility for benefits, the precise standard in cases where the plan administrator is also burdened by a conflict of interest is only discernable by carefully considering the conflict of interest, including evidence outside of the administrative record that bears upon it.

## B. The Impact of Summary Judgment

**[2]** The case before us arrives on a grant of summary judgment, as opposed to after bench trial or findings of fact under

Fed. R. Civ. P. 52(a). In reviewing grants of summary judgment, we are generally guided by the traditional rules of summary judgment, including the requirement that summary judgment must be denied if, "viewing the evidence in the light most favorable to the non-moving party," there are genuine issues of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). We have previously held, however, that where the abuse of discretion standard applies in an ERISA benefits denial case, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). Though the *Bendixen* court did not provide an explicit basis or citation for that conclusion, the conclusion followed in situations where the district court's review was limited to the administrative record and the claimant was not entitled to a jury trial. *See Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005). *But see Patton v. MFS/Sun Life Fin. Distrib., Inc.*, 480 F.3d 478, 484 (7th Cir. 2007) (rejecting the First Circuit's approach in *Orndorf*). Importantly though, *Bendixen* predated *Abatie* and its requirement that any conflict always be considered, applied an abuse of discretion standard untempered in any way, and did not involve a case where the district court examined evidence outside of the administrative record. *See Abatie*, 458 F.3d at 969.

Here, the district court properly considered evidence outside of the administrative record on summary judgment to determine the precise contours of the abuse of discretion standard as it applied in this case. However, thereafter the district court considered and weighed that evidence without reference to the traditional rules of summary judgment. After *Abatie*, we conclude that was error.

**[3]** *Abatie* requires a district court to consider the precise contours of the abuse of discretion standard in every case before determining whether the applicable standard was vio-

lated. *See Abatie*, 458 F.3d at 969. In this case, the evidence of bias that Nolan submitted, and which was outside of the administrative record, bore directly on the contours of the abuse of discretion standard, as it permitted an inference that Network Medical Review and Drs. Silver and Jares were biased in favor of MetLife. The district court apparently rejected that inference, but did so on summary judgment without applying any of the traditional rules of summary judgment (e.g., the requirement that evidence be viewed in the light most favorable to the non-moving party). Nor did the district court conduct a bench trial on the issue of bias, which in and of itself would have ensured a full bias inquiry. Instead, without evidentiary hearing or bench trial, the district court considered and rejected Nolan's bias argument by weighing the documentary evidence of bias, and ignoring the protections that summary judgment usually affords the non-moving party. Though the district court would have been permitted to weigh such evidence after bench trial, weighing that evidence on summary judgment was improper in this case where the evidence was outside of the administrative record. *See In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (noting potential importance of, and differences between, reviewing evidence at bench trial as opposed to at summary judgment). Nothing in *Bendixen*, 185 F.3d at 942, is to the contrary.

**[4]** Whether MetLife improperly denied benefits in this case is a close question, particularly when and if the abuse of discretion standard is tempered with skepticism. There were, after all, no less than three treating physicians who opined that Nolan was unable to perform sedentary work. That is not to say that MetLife was not entitled to rely on the opinions of its independent physicians. However, given MetLife's reliance on Network Medical Review and Drs. Jares and Silver in denying benefits in this case, it is possible that had the district court viewed the evidence of bias in the light most favor-

able to Nolan—and tempered the abuse of discretion standard with skepticism because of it—the court would have determined that the evidence of bias was material and denied summary judgment under the facts of this case. In other words, had the district court applied a different standard of review because of the bias evidence—abuse of discretion tempered with skepticism as opposed to abuse of discretion tempered with no skepticism—its decision on the merits of the underlying benefits decision may have been different.[5]

**[5]** We hold that the district court erred in failing to view the evidence of bias, which the district court considered but which was not part of the administrative record, through the lens of the traditional rules of summary judgment. The evidence permitted inferences of bias that could have materially affected the abuse of discretion standard of review in this case, particularly at summary judgment. If that evidence was material, Nolan was entitled to have the evidence examined by the district court at a bench trial, where a full and detailed inquiry into the bias of Network Medical Review and Drs. Jares and Silver—including the opportunity for additional evidence or testimony—would allow the court as trier of fact to effectively determine bias with finality.

If we were to allow a district court to weigh new evidence bearing on a conflict of interest at summary judgment, we would essentially be shielding that evidence—and the inferences that it raised—from a bench trial. We conclude that such a rule would not only be unfair, but would conflict with the spirit of *Abatie* and *MetLife*.

## IV.   CONCLUSION

As we noted in *Kearney*, 175 F.3d at 1095, "[t]here is no such thing as . . . findings of fact, on a summary judgment

---

[5]This is particularly true here, where the evidence of bias, taken as true, undermined MetLife's strongest grounds for denying benefits.

motion." (citation omitted). Here, the district court accepted evidence outside of the administrative record that bore on the standard of review, but then considered and weighed that evidence without reference to the traditional rules of summary judgment. Because we hold that the traditional rules of summary judgment apply to evidence outside of the administrative record in ERISA cases, we hereby reverse and remand this case back to the district court for further proceedings.

If on remand the district court determines that the evidence of bias is not material—in other words, even viewing the evidence in the light most favorable to Nolan, the abuse of discretion standard is not tempered sufficiently to change the decision on the merits—then summary judgment may remain appropriate. However, if the district court determines that the evidence of bias is material, it will have to conduct a limited bench trial to definitively determine bias and, in turn, the precise contours of the abuse of discretion standard under the facts of this case. Thereafter, the court can evaluate MetLife's benefits determination armed with a precise standard, whatever it may be.

**REVERSED and REMANDED.**