09-3882-cv
Fortune v. Group Long Term Disability Plan

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of August, two thousand ten.

PRESENT:  REENA RAGGI,
          GERARD E. LYNCH,
                    *Circuit Judges*.[*]

-------------------------------------------------------------------------

DIANE S. FORTUNE,

        *Plaintiff-Counter-Defendant-Appellant*,

        v.                                        No. 09-3882-cv

GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF KEYSPAN CORPORATION,
HARTFORD LIFE INSURANCE COMPANY,

        *Defendants-Counterclaimants-Appellees*,

OXFORD HEALTH PLANS, METROPOLITAN LIFE
INSURANCE COMPANY,

        *Defendants*.

-------------------------------------------------------------------------

---

[*] The Honorable Robert D. Sack, originally a member of the panel, recused himself from this case. The remaining two panel members, who are in agreement, have decided this case in accordance with Second Circuit Internal Operating Procedure E(b).

APPEARING FOR APPELLANT:   ROBERT J. ROSATI, The ERISA Law Group, Fresno, California.

APPEARING FOR APPELLEES:   MICHAEL H. BERNSTEIN (John T. Seybert, *on the brief*), Sedgwick Detert Moran & Arnold, LLP, New York, New York.

Appeal from the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on August 10, 2009, and the order of the district court entered on September 12, 2009, are AFFIRMED.

Plaintiff Diane Fortune is the beneficiary of a group long term disability plan ("LTD Plan") provided by her employer and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The Plan provides long-term disability benefits to an employee who is disabled from performing any occupation that provides at least eighty percent of the employee's pre-disability salary. Fortune here appeals (1) an award of summary judgment in favor of defendant Hartford Life Insurance Company ("Hartford") on her ERISA claim for wrongful denial of disability insurance benefits and on Hartford's counterclaims for reimbursement of benefit overpayments; (2) the denial of leave to amend the complaint; and (3) the denial of a Rule 60(a) motion to correct the August 10, 2009 judgment. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

In challenging summary judgment, Fortune argues that (a) the evidence was insufficient to support Hartford's determination that she was not disabled within the meaning of the Plan, (b) triable issues of fact exist regarding Hartford's conflict of interest, and (c) Hartford cannot recover for overpayment of Plan benefits based on her dependent children's receipt of social security benefits.

In an ERISA action, we review de novo a grant of summary judgment based on the administrative record. See Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009). "Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (internal quotation marks omitted). Because the terms of the LTD Plan grant Hartford discretion to interpret the policy and to determine participant eligibility, the question before us is whether the denial of benefits was arbitrary and capricious, that is, "without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. at 83 (internal quotation marks omitted); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." Durakovic v. Bldg. Serv. 32BJ Pension Fund, --- F.3d ----, 2010 WL 2519645, at *6 (2d Cir. 2010) (internal quotation marks omitted).

3

1. The Disability Determination

As Hartford does not dispute that Fortune suffers from multiple sclerosis ("MS"), we here consider only whether the evidence was sufficient to permit a reasonable mind to conclude that Fortune's MS-related impairments did not render her disabled within the meaning of the Plan.

a. Physical Impairments

Hartford's determination that Fortune's physical limitations were not sufficiently severe to meet the Plan's disability standard finds support in more than a scintilla of evidence. Notably, it is undisputed that Fortune's Expanded Disability Status Score ("EDSS"), an objective measure for MS disability, was never higher than 2.5, which signified only minimal disability. Further, after reviewing Fortune's medical records, Dr. William Sniger, a physician board certified in both physical medicine and rehabilitation and spinal cord injury medicine, opined to "a reasonable degree of medical certainty that the preponderance of information does not support [Fortune's] alleged inability to perform full-time work from a physical perspective." Sniger Report at 4 (May 2, 2006); see also id. at 3.

Although Fortune submits that the general meaning accorded a specific EDSS is not controlling, it was hardly arbitrary or capricious for Hartford to have accorded Fortune's consistent test score considerable weight in light of the fact that no neurologist who examined Fortune noted any objective findings of significant functional limitation. While some of Fortune's treating physicians offered opinions more supportive of her disability

4

claim, Hartford was not required "to accord special weight" to these opinions, nor did it bear a "discrete burden of explanation" because it "credit[ed] reliable evidence that conflict[ed] with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Indeed, at one point, Fortune's own treating neurologist, Dr. Ira M. Turner, noted that Dr. Sniger's assessment of Fortune's physical ability to work "seem[ed] reasonable." July 12, 2006 Inquiry Form.

### b. Cognitive Impairments

Fortune asserts that cognitive impairments preclude her from performing her past level of intellectually demanding work or any work that would provide her with eighty percent of her prior income. While this argument presents a closer question than that based on physical impairment, we conclude that Hartford's finding that Fortune was not disabled was not unreasonable.

In urging otherwise, Fortune faults Hartford for relying on the "Employability Analysis Report" prepared by vocational expert Angela Baird, which focused on Fortune's physical impairments in finding her capable of working at high-level intellectual tasks, including as an attorney, accountant or administrator. Fortune submits that Hartford should have given more weight to a subsequent cognitive evaluation by Dr. Judith Shaw, a psychologist who determined that Fortune had an IQ of 97, with a verbal IQ of 103 and a performance IQ of 87. Fortune argues that this evidence, combined with Dr. Shaw's conclusion that Fortune's "cognitive functioning might well be somewhat variable and

5

erratic," Shaw Report at 5 (Feb. 17, 2005), demonstrates Fortune's inability to perform the intellectually demanding jobs identified in the Baird Report.

The administrative record, however, contains contrary evidence on which Hartford was entitled to rely. Neuropsychologist Milton Jay questioned the scope of the Shaw evaluation, specifically, its lack of any (1) "investigation into the major modalities of language, memory, sustained attention, or important aspects of executive cognition"; (2) "use of cognitive symptom validity testing to assess directly the claimant's level of effort on cognitive assessment"; and (3) "use of any standardized objective psychiatric inventory, such as the MMPI-2, to assess possible psychological sources of cognitive performance problems." Jay Report at 3-4 (Apr. 25, 2007). In the absence of such inquiries, Dr. Jay concluded that Dr. Shaw's evaluation was "not sufficient to support formally that [Fortune] was so impaired by cognitive difficulties that she no longer had the functional capacity to consistently work on a full-time basis." Id. at 4. Dr. Jay's findings are corroborated by those of another neurologist, Dr. Randall B. King, who observed that although Fortune had "numerous cognitive complaints," there was "little evidence of cognitive dysfunction." King Report at 7 (Apr. 25, 2007). While Dr. Jay did opine that Fortune's IQ "performance, if confirmed, would seem to be below expectations for someone with a professional education," Report of Dr. Milton Jay at 5 (emphasis added), as discussed, the assessments that would have provided such confirmation were never conducted.

Fortune also faults Hartford for denying her disability claim despite the Social Security Administration's ("SSA") determination that she was disabled from performing any occupation, a more demanding standard than that applicable under the Plan. While Hartford did not explain why its assessment of Fortune's disability claim differed from that of the SSA, it was not bound by the agency's decision. See Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 443 (2d Cir. 2006). Further, Fortune failed to respond to Hartford's request for a copy of the SSA's rationale for decision.

On this record, we cannot conclude that Hartford acted arbitrarily or capriciously in discounting the reliability of Dr. Shaw's evaluation or in concluding that Fortune's cognitive limitations did not render her disabled from any occupation within the meaning of the LTD Plan.[1]

      c.     Conflict of Interest

Fortune argues that the district court was precluded from determining on summary judgment the weight to be accorded the structural conflict of interest arising from Hartford's status as both claims administrator and claims payor, see Metro. Life Ins. Co. v. Glenn, 128

---

[1] McCauley v. First Unum Life Ins. Co., 551 F.3d 126 (2d Cir. 2008), does not compel a contrary result. When presented with Dr. Shaw's report and other medical evidence submitted by Fortune, Hartford conducted further investigation by retaining Drs. King and Jay to conduct an independent review of the evidence. Because Dr. Jay identified concerns regarding the reliability and validity of Dr. Shaw's findings, we are not persuaded that Hartford abused its discretion by failing to perform a vocational assessment incorporating Dr. Shaw's findings.

7

S. Ct. 2343, 2346 (2008), because resolution of the issue depended on evidence outside of the administrative record. We are not persuaded.

Although a court must take such a conflict into account and "weigh [it] as a factor in determining whether there was an abuse of discretion," McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008), we have not limited a court's ability to do so to those instances in which the evidence bearing on the conflict of interest is confined to the administrative record.[2]  Here, the district court properly acknowledged that the alleged conflict was one of several factors to be considered, see Metro. Life Ins. Co. v. Glenn, 128 S. Ct. at 2351 ("[C]onflicts are but one factor among many that a reviewing judge must take into account."), but it accorded the conflict little weight given the procedures Hartford had implemented to wall off claims examiners from those employees concerned with the company's finances. The court further concluded that neither Hartford's retention of Dr. Jay and Dr. King from an organization that derives a significant portion of its revenue from Hartford nor Hartford's decision declining to find the SSA's favorable determination corroborative of Fortune's claim compelled a contrary result.

---

[2] In support of her contention that summary judgment is inappropriate where evidence outside of the administrative record bears on a conflict of interest, Fortune relies on Nolan v. Heald Coll., 551 F.3d 1148 (9th Cir. 2009). That decision is not binding on this court. In any event, it is not clear that Nolan would invariably preclude a court confronted with extrinsic conflict-of-interest evidence from awarding summary judgment. See id. at 1155 ("[I]t is possible that had the district court viewed the evidence of bias in the light most favorable to [the claimant] – and tempered the abuse of discretion standard with skepticism because of it – the court would have determined that the evidence of bias was material and denied summary judgment under the facts of this case." (emphasis added)).

We identify no error in these conclusions. As the Supreme Court observed in Glenn, "where [an] administrator has taken active steps to reduce potential bias and promote accuracy, for example, by walling off claims administrators from those interested in firm finances," a structural conflict of interest "should prove less important (perhaps to the vanishing point)." Id. Fortune has adduced no evidence indicating that Hartford has a history of biased claims administration. Nor is the record medical evidence so thin or unsound as to call into question the legitimacy of Hartford's determination of this particular claim. For the foregoing reasons, we reject Fortune's claim that Hartford's conflict of interest warrants a finding that its decision denying her claim for benefits was arbitrary and capricious.

### 2. Overpayment of Benefits

Fortune submits that the district court erred in awarding judgment for Hartford on its counterclaims for Plan overpayments. Fortune contends that (1) the LTD Plan does not permit Hartford to offset her benefits on account of social security payments to her children, and (2) any such offset violates public policy. We disagree.

### a. LTD Plan Provisions

The LTD Plan permits Hartford to offset Fortune's monthly benefits by "Other Income Benefits," defined as "any benefit for loss of income, provided to you or to your family, or to a third party on your behalf, as a result of the period of Disability for which you are claiming benefits under this plan," including "disability benefits under: a) the United States Social Security Act . . . that you, your spouse and children are eligible to receive

9

because of your Disability." LTD Plan at 17. Fortune nevertheless contends that (1) the payments made to her children were not paid to her "family" but, rather, to her children as individuals; and (2) the payments were not a "benefit for loss of income," but rather, were for the children's maintenance and support. We must uphold Hartford's interpretation of the Plan so long as it is reasonable. See Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995); see also Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003).

Since the Plan definition explicitly includes Social Security disability benefits that Fortune's "children are eligible to receive because of [her] Disability," LTD Plan at 17, Hartford's interpretation easily satisfies this reasonableness standard. Even without that express inclusion, Hartford's interpretation accords with the plain language of the Plan. Benefits payable to children are provided to the "family," see Webster's Third New Int'l Dictionary 821 (1986) (defining "family" as "the body of persons who live in one house and under one head including parents[ and] children"); Black's Law Dictionary 679 (9th ed. 2009) (defining "family" as "[a] group consisting of parents and their children"), and the purpose of social security disability benefits is to replace income lost due to the wage earner's inability to work. Accordingly, the district court correctly allowed Hartford to offset Fortune's benefits by the amount awarded to her children.

b. Public Policy

Fortune's public policy challenge is unpersuasive in light of our decision in Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198-99 (2d Cir. 1989) (recognizing general

10

enforceability of plan provisions reducing benefits by amount of any social security benefits).

See also Lamb v. Conn. Gen. Life Ins. Co., 643 F.2d 108, 109-12 (3d Cir. 1981) (rejecting claim, brought in context of long-term disability policy not governed by ERISA, that public policy expressed in Sections 207 and 202 of Social Security Act, 42 U.S.C. §§ 407, 402, "forbid[] the . . . offset against [claimant's] disability insurance benefits of Social Security benefits payable to [his or] her dependents"); Dowell v. Aetna Life Ins. Co., 468 F.2d 802, 804-05 (4th Cir. 1972) (enforcing provision of group disability policy not governed by ERISA providing for setoff based on social security benefits paid to claimant's wife and children). Approximately half of the LTD plans adopted by Fortune 500 companies providing for offsets based on social security benefits do so based on benefits paid not only to the claimant but also to the claimant's dependents. See In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996). While there are minor variations in language among these plans, in view of the clarity of the wording of the instant Plan, there is no force to Fortune's argument that cases permitting such offsets with respect to other plans are distinguishable.

In these circumstances, the district court properly awarded summary judgment on Hartford's counterclaims.

3.      Leave To Amend

Because there is no question that the LTD Plan permitted Hartford to offset Fortune's benefits by the social security benefits awarded to her children, the district court acted well within its discretion in denying Fortune leave to amend to assert a class action claim on

11

behalf of all Plan participants subject to similar offsets, see Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009), as such amendment would plainly have been futile, see Foman v. Davis, 371 U.S. 178, 182 (1962); Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Ger., --- F.3d ----, 2010 WL 2891069, at *14 (2d Cir. 2010).

4.    Rule 60(a)

Equally unavailing is Fortune's contention that the district court erred in denying her Rule 60(a) motion to correct the August 10, 2009 judgment because it (1) failed to address her "principal claim" and (2) awarded Hartford damages on its counterclaim "when the complaint sought only equitable relief of restitution."  Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp., 08 Civ. 1017, slip op. at 3 (E.D.N.Y. Sept. 12, 2009) (internal quotation marks omitted).  Because the district court's July 25, 2009 decision and order clearly dismissed Fortune's complaint, the court was not required to repeat the fact of dismissal in its August 10, 2009 decision and order awarding Hartford damages on its counterclaim.  Further, as the district court observed, its August 10 decision "accurately reflect[ed] the Court's intended resolution of Hartford's counterclaim."[3]  Id. at

_____

[3] As the district court noted, Rule 60(a) is not a mechanism for relitigating the merits of claims underlying a judgment.  Accordingly, we identify no abuse of discretion in the district court's conclusion that Rule 60(a) relief was not merited by Fortune's contention that Hartford was improperly awarded damages on its counterclaim.  To the extent Fortune faults the August 10 order and judgment because they contemplate monetary damages rather than equitable restitution, we are not persuaded.  The LTD Plan contemplates recovery of specific funds in Fortune's possession, i.e., excess LTD payments, not the social security benefits awarded to her children.  The order and judgment identify the specific portion (i.e., amount) of those funds (overpayments) to which Hartford is entitled.  On this record, the order and judgment are properly construed as adjudicating a claim for equitable relief.  See Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 230-31 (1st Cir. 2010) (finding

4. On this record, we identify no abuse of discretion in the district court's denial of Fortune's Rule 60(a) motion. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1140 (2d Cir. 1994) (reviewing district court's decision on Rule 60(a) motion for abuse of discretion and holding that "[t]o be correctable under Rule 60(a), . . . a judgment must fail to reflect the actual intention of the court").

5.     Conclusion

We have considered Fortune's remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the August 10, 2009 judgment and September 12, 2009 order of the district court are AFFIRMED.

<div style="margin-left:40%">

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

</div>

---

counterclaim for overpayment of LTD payments equitable where "the LTD Plan target[ed] specific funds for recovery – [claimant's] LTD payments – and identifie[d] the specific portion to which [the insurer was] entitled – the amount of the overpayment while [claimant] was receiving benefits under the LTD Plan"); Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894, 901 (8th Cir. 2006) (finding that Liberty's claim was equitable when it sought "a particular share of a specifically identified fund – all overpayments resulting from the payment of social security benefits").