NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUN 7 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CONTINENTAL MEDICAL TRANSPORT
LLC, DBA Jet Rescue,

Plaintiff-Appellant,

v.

HEALTH CARE SERVICE
CORPORATION, DBA Blue Cross Blue
Shield of Illinois; BOEING COMPANY
CONSOLIDATED HEALTH AND
WELFARE BENEFIT PLAN,

Defendants-Appellees.

No.    21-35481

D.C. No. 2:20-cv-00115-JCC

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted March 9, 2022
Portland, Oregon

Before:  GRABER and BEA, Circuit Judges, and REISS,[**] District Judge.
Dissent by Judge BEA.

Plaintiff-Appellant Continental Medical Transport LLC, d/b/a Jet Rescue

---

        [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

        [**]     The Honorable Christina Reiss, United States District Judge for the District of Vermont, sitting by designation.

("Jet Rescue") appeals the district court's grant of summary judgment in favor of Defendants-Appellees The Boeing Company Consolidated Health and Welfare Benefit Plan (the "Plan") and Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Illinois ("Blue Cross") in this action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Reviewing de novo the district court's "choice and application of the standard of review to decisions by fiduciaries in ERISA cases[]" and its grant of summary judgment, *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc)), we affirm.

1. The district court correctly applied an abuse of discretion standard. "When a plan unambiguously gives the plan administrator discretion to determine eligibility or construe the plan's terms, a deferential abuse of discretion standard is applicable." *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023-24 (9th Cir. 2008) (citing *Abatie*, 458 F.3d at 963). The Plan grants "full discretionary authority to interpret the Plan" and "determine all questions" regarding eligibility for benefits to the Plan administrator which was comprised of a committee (the "Committee"). Although Jet Rescue now argues that the Committee did not properly delegate its discretion to Blue Cross, thereby mandating de novo review, in its Complaint, Jet Rescue alleged that Blue Cross

2

exercised fiduciary discretion in its administration of the Plan. On summary judgment, Jet Rescue argued for the first time that a de novo standard applied. In response, Blue Cross produced the Committee's written majority vote to approve Blue Cross as Plan administrator which was subsequently ratified by Plan documents reflecting an unequivocal delegation of discretion to Blue Cross.

2. Under either an abuse of discretion or de novo standard, the district court's conclusion that D.O.'s air transport from Lima to Miami was not medically necessary under the Plan was overwhelmingly supported by the record. To qualify for air transportation, the Plan requires that (1) "[g]round ambulance transportation is not available[,]" (2) "[y]our condition is unstable and requires medical supervision and rapid transport[,]" and (3) there is a "medical emergency" and "the first hospital does not have the required services or facilities to treat your condition and you need to be transported to another hospital[.]" A "medical emergency" is defined as

> a recent and severe condition, sickness, or injury, including (but not limited to) severe pain, which would lead a prudent layperson . . . possessing an average knowledge of medicine and health, to believe that failure to get immediate medical care could result in[:] [1] Placing your health in serious jeopardy, [2] Serious impairment to one or more bodily functions, [or] [3] Serious dysfunction to one or more body parts or to one or more organs[.]

Prior to the Lima to Miami flight, D.O.'s prognosis was "guarded, but in clinical improvement" at Clinica Delgado, "one of the newest and most advanced

3

hospital facilities in South America." Clinica Delgado's discharge notes indicate that D.O. was "better in terms of organic dysfunctions such as respiratory and renal" and he was being weaned from mechanical ventilation and only remained intubated for "airway protection in transportation as he could deteriorate due to his delicate state."

Blue Cross advised in advance that the Lima to Miami flight would not be covered by the Plan because it was not medically necessary. Jet Rescue transported D.O. anyway after obtaining a sizable deposit from D.O.'s ex-wife. Jackson Memorial's intake forms state that D.O.'s ex-wife "decided to move his care to the U.S. because she could not speak Spanish and did not understand the plan of care." After the transport, D.O.'s condition deteriorated. He became septic, experienced multiorgan failure, and died five days later.

Jackson Memorial's plan of care was similar to Clinica Delgado's. The only treatments Clinica Delgado identified that it could not provide to D.O., an ECMO machine and a liver transplant, were ones for which D.O. was not a candidate and which, in any event, were not provided by Jackson Memorial. Although D.O. may have received additional care and treatment at Jackson Memorial, there is no evidence that this care and treatment was unavailable at Clinica Delgado. Against this backdrop, both the district court and Blue Cross properly determined that the Lima to Miami flight was not medically necessary because there was no "medical

4

emergency" and Clinica Delgado had "the required services or facilities to treat [D.O.'s] condition."

3. Contrary to Jet Rescue's contention, the independent review organization's ("IRO") denial of benefits also does not require de novo review. ERISA plans are required to provide "full and fair" appeal processes, 29 C.F.R. § 2560.503-1(h)(1), including the right to have an adverse benefit determination involving medical judgment reviewed by an IRO. 42 U.S.C. § 300gg-19(b); 45 C.F.R. § 147.136(d). An IRO's reversal of an adverse benefit determination is binding upon a plan, 45 C.F.R. § 147.136(d)(2)(iv), but an affirmance is not, and a plan may "voluntarily make[] payment on the claim or otherwise provide[] benefits at any time, including after a final external review decision[.]" 45 C.F.R. § 147.136(d)(2)(iii)(B)(7)(v). Accordingly, the IRO's non-binding affirmance of Blue Cross's denial of benefits did not negate Blue Cross's discretion.

**AFFIRMED.**



*Continental Medical Transport LLC v. Health Care Service Corporation* (21-35481)

BEA, Senior Circuit Judge, dissenting:

1.  The majority holds that Appellee Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Illinois ("Blue Cross") was properly delegated fiduciary responsibility under the terms of The Boeing Company Master Welfare Plan ("Master Welfare Plan"), and that therefore, the district court properly applied an abuse of discretion standard to Blue Cross's denial of benefits to Appellant Continental Medical Transport LLC, d/b/a Jet Rescue ("Jet Rescue").[1]  Not so.

The Boeing Company Consolidated Health and Welfare Benefit Plan (the "Plan") is governed by the Master Welfare Plan.  Section 4.1 of the Master Welfare Plan details how the "Plan Administrator" will administer the Plan.[2] Concerning the delegation of authority, the Master Welfare Plan reads as follows:

4.3  Delegation of Authority

---

[1] To the extent the majority implies that Jet Rescue is bound by a factual "judicial admission" it made in its Complaint, such an implication is in error.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *see also American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1064 (9th Cir. 2012).

[2] As defined in the Master Welfare Plan:

"Plan Administrator" means the Employee Benefit Plans Committee established by The Boeing Company Board of Directors, except as otherwise specified in the Governing Documents with respect to any Component Benefit Program.

The administrative duties and responsibilities set forth in Section 4.1 may be delegated by the Plan Administrator in whatever manner and extent it chooses to such person or persons as it selects.

Any allocation or delegation of fiduciary responsibilities will be in writing, approved by majority vote. An allocation or delegation may be changed or ended by majority vote. Any allocation or delegation may include the power to subdelegate without further recourse to the Plan Administrator.

Thus, the Master Welfare Plan contemplates two types of delegation. The delegation of "administrative duties and responsibilities" can be delegated "in whatever manner and extent" the Plan Administrator (or the "Committee") so chooses. However, "[a]ny allocation or delegation of fiduciary responsibilities will be in writing, approved by majority vote."

The majority concludes that Blue Cross satisfied the Master Welfare Plan's fiduciary delegation provision through two disjointed occurrences. First, on December 18, 2009, the Committee held a meeting, as reflected in the following meeting minutes (the "Minutes"):

Pam French called the meeting to order.

(1) Health Plan Vendor. Ms. French provided an introduction for the group on the change in the health plan vendor. Mr. White presented the recommendation to the Committee to change health plan vendors no earlier than January 1, 2011, and as soon as administratively practicable thereafter, to Blue Cross Blue Shield of Illinois from Regence Blue Shield. The Committee discussed that communications to employees needed to be clear and concise. There was a motion to accept the recommendation and to authorize Alan May and Pam French to implement the change. The motion passed.

(2) Adjournment.  Ms. French moved to adjourn the meeting; Mr. May seconded the motion and the meeting was adjourned.

Second, on April 22, 2013, The Boeing Company entered into a signed Administrative Services Agreement (the "ASA") with Blue Cross, which states that the "Effective Date of this Agreement is January 1, 2011."

To be sure, the ASA explicitly purports to delegate "discretionary authority" [i.e., fiduciary responsibility] to Blue Cross.  However, the ASA was not signed by both parties until April 23, 2013, and the ASA was signed by only a single representative from Boeing.[3]  Moreover, the Minutes do not discuss the existence of the ASA or of any document presented or discussed at the meeting which explicitly proposed to delegate fiduciary responsibility to Blue Cross.[4]  Instead, the Minutes attest only to a vote to change the Plan's "vendor" to Blue Cross from Regence Blue Shield.[5]  The "vendor" referenced in the Minutes could just as easily refer to a vendor of the non-fiduciary services contemplated in Section 4.3 of the Master Welfare Plan as it could to a vendor of the fiduciary services contemplated in Section 4.3 of the Master Welfare Plan.  And as "the default is that the

---

[3] Additionally, it is unclear whether the signatory on behalf of Boeing was even a member of the Plan Committee, further undercutting any connection between this document and the December 18, 2009 meeting.

[4] Additionally, at oral argument, counsel for Blue Cross confirmed that there was no evidence in the record establishing that anything in writing proposing to delegate fiduciary responsibility to Blue Cross was considered at the meeting.

[5] Contrary to the majority's description, the Minutes did not "approve Blue Cross as *Plan administrator*."

administrator has no discretion," the burden is on the party seeking an abuse of discretion standard of review to establish that it has been properly delegated fiduciary responsibility. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999). Therefore, I cannot agree that Blue Cross was properly delegated fiduciary responsibility under the terms of the Master Welfare Plan on the strength of only nondescript meeting minutes from December 18, 2009, coupled with an agreement signed April 23, 2013, nearly three and a half years after said meeting, where the meeting minutes make no reference to any such agreement being presented or discussed.

2. As I do not believe Blue Cross was properly delegated fiduciary authority under the terms of the Master Welfare Plan, I am of the view that de novo review should apply to this case. "If de novo review applies, no further preliminary analytical steps are required. The court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

The majority claims that Blue Cross's denial of benefits to Jet Rescue can be affirmed under a de novo standard of review, because, in its view, that "D.O.'s air transport from Lima to Miami was not medically necessary under the Plan was overwhelmingly supported by the record." However, Federal Rule of Civil

Procedure 56, which defines the conditions under which summary judgment is to be granted, does not provide for judgment whenever a conclusion is "overwhelmingly supported." Instead, it provides for judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). And for the following reasons, there are genuine disputes as to material facts surrounding whether D.O.'s air transport from Lima to Miami was medically necessary under the terms of the Plan.

The majority claims that D.O. received a similar plan of care in Lima as he did in Miami, such that Jet Rescue failed to raise a genuine dispute of material fact concerning whether Lima had "the required services or facilities [needed] to treat" D.O.'s condition. However, on July 16, 2016, Peruvian Doctor Marco Camere of Clinica Delgado completed a "Physician/Qualified Medical Personnel Statement – Medical Necessity and Reasonableness for Air Medical Transport" form, wherein he checked boxes corresponding to the following entries:

> - The Patient's condition is too critical to allow for longer transportation time by ground
> - Patient requires a higher level of care
> - The Patient's condition is too unstable for a ground unit and requires critical care abilities of the air ambulance transport team
> - Patient requires immediate and rapid transport due to the nature and or severity of the illness / injury: **symptomatic hypotension; multi-organ failure; cardiac arrythmia [these bolded entries were manually entered into the form]**

And after the fact, on January 12, 2017, Dr. Camere provided a letter on behalf of Jet Rescue, which stated in relevant part as follows:

> Due to the patient's chronic pathologic history (Please refer to Diagnostic) and limits presented in our country, I am recommended [sic] and requested that the patient be transferred via emergency air ambulance. The patient was found in a very high urgency to receive intensive care so he could have a better prognosis to his treatment.
>
> Jackson Memorial Hospital has 1500 beds where they are capable of giving the patient the intensive and specialized care required and resources that our facility cannot count on in our country of Peru like a [ECMO] Machine and ability to perform a Liver Transplant. Jackson Memorial is the closest most appropriate facility that is capable of meeting the needs of the patient critical condition that is unable to be done in Peru.

What's more, the record indicates that at Jackson Memorial, D.O. received "continuous renal replacement therapy," which was a treatment he was not receiving at Clinica Delgado. Furthermore, while the records from Clinica Delgado do not indicate the precise level of physician attention D.O. was receiving, while at Jackson Memorial, D.O. received direct critical care from multiple medical doctors on at least five separate occasions: (40 minutes of critical care time on 7/22/2016); (40 minutes of critical care time on 7/23/2016); (35 minutes of critical care time on 7/24/2016); (40 minutes of critical care time on 7/26/2016); (40 minutes of critical care time on 7/27/2016). That D.O. received a higher degree of physician attention at Jackson Memorial is consistent with Dr.

Camere's statement that D.O. "was found in a very high urgency to receive intensive care so he could have a better prognosis to his treatment."

Altogether, Dr. Camere's statements, along with the documented medical care received by D.O. at Jackson Memorial, create a genuine dispute of material fact as to whether or not D.O.'s transport to Jackson Memorial was medically necessary. Accordingly, I would reverse the district court's grant of summary judgment in favor of Blue Cross.