FROMBERG, INC., Appellant,

v.

GROSS MANUFACTURING COMPANY, Inc., Appellee.

No. 18539.

United States Court of Appeals
Ninth Circuit.

Feb. 26, 1964.

Nilsson, Robbins & Anderson, and B. G. Nilsson, Los Angeles, Cal., for appellant.

Christie, Parker & Hale, C. Russell Hale, and Harold L. Jackson, Pasadena, Cal., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Appellant is the owner of United States Letters Patent No. 2,828,791 and brought this action charging infringement of the patent. The trial court granted the appellee's motion for summary judgment. We are affirming.

The patent is a combination patent involving two unpatentable elements. The combination is a simple, clever, useful, and highly successful device, the purpose of which is to enable a tire repairman to repair a hole in a tubeless automobile tire without removing the tire from the rim. The first of the two unpatentable elements which form the combination is an elongated metal tube of small diameter, sharpened at one end so that it can be forced through the tire and having a flared opening at the other end for the purpose of facilitating insertion into the tube of an elongated rubber plug which is compressed when inside the tube. The plug is the other element. The patented combination is used in connection with an "applicator" on which appellant also holds a patent No. 2,828,657. The applicator is used to hold the flared end of the tube containing the rubber plug while the tube is being forced through the tire and then simultaneously to eject the rubber plug from the tube and withdraw the tube from the tire so that the plug remains in the hole. As the inventor stated in the patent in suit: "The object of this invention is, therefore, to provide means for installing a stem of resilient material in an opening through a motor vehicle tire."

The appellee manufactures rubber plugs of a size and shape suitable to be inserted in the metal tubes which are one of the two elements in the Fromberg combination. Appellee's plugs are specifically designed for this use. In marketing them, appellee purchases one of appellant's patented combinations of tube and plug, and places it, together with a supply of appellee's rubber plugs and a "cartridge holder" produced by appellee, in a cardboard package. It then sells the package as a kit labeled "Rubber Rivet Reloads for use with Fromberg Cartridges." It plainly shows that the enclosed Fromberg cartridge is appellant's and that the other items are appellee's, and there is no claim that appellee is deceiving purchasers as to the source of the plugs sold by appellee. The kit contains an instruction sheet that

shows the buyer how, with the use of the cartridge holder, he can insert appellee's rubber plug in the empty Fromberg tube, thus enabling him to reuse the tube. Appellee does not manufacture or sell tubes; it uses and sells only appellant's tubes. Appellant, on the other hand, does not separately market its tubes or plugs, but sells only the combination.

The validity of appellant's patent is admitted by appellee on this appeal, although it was attacked in its answer. We assume, but do not decide, that the patent is valid.

The facts that we have stated appear in affidavits submitted by appellee. These affidavits were accompanied by a copy of the patent in suit and of its "file wrapper" and by physical exhibits consisting of appellant's cartridges in four different sizes, each containing one of appellant's rubber plugs, samples of appellee's rubber plugs, of its cartridge holder, and of the carton in which its kits are sold, and a sample package put out by appellant and containing 25 of its cartridges. Also attached to one of appellee's affidavits is a copy of an advertisement published by appellee in which it advertises its rubber plugs as reloads for Fromberg's cartridges and shows by means of illustrations how to reload them. In that affidavit, which was made by appellee's president, it is stated: "Each of the Fromberg cartridge shells (Exs. A, B, C and D) are capable of inserting many of the expendable rubber plugs into tires."

In response, appellant filed an affidavit by one of its counsel in which it is stated that the Fromberg plug "requires the use of an applicator for placement in a tire and is not self-dispensing." A copy of the patent No. 2,828,657 covering the applicator is attached to this affidavit. There is also an affidavit of the executive vice president of appellant in which it is stated:

"3. That in the use of a Fromberg rivet, the rubber stem is placed in a tire puncture by a repair gun, and the metal-shell part of the rivet does not, and cannot dispense the stem into a tire.

"4. That spent shells from Fromberg rivets have no practical value, because the shells can be manufactured for less cost than they can be reclaimed.

"5. That the shell portion of a Fromberg rivet is designed for a single use and to reclaim such shells and refill them for reliable operation is not economically feasible."

Appellant states the truism that it is improper to grant a motion for summary judgment under Rule 56, F.R.Civ.Proc. unless the affidavits and other evidence produced on the motion "show that there is no genuine issue as to any material fact." (Rule 56(c)). It asserts that the affidavit last quoted raises such genuine issue. We think not. There is no contention by appellee that appellant's loaded cartridge can be used without the applicator. Appellant's affidavit does not contradict appellee's statement that appellant's cartridges are capable of reuse. It merely asserts that such reuse is not economically feasible, and that they can be manufactured for less cost than they can be reclaimed. If this be true, and we assume for the purpose of this appeal that it is, then appellee is not likely to stay in business very long because purchasers of the Fromberg cartridge will discover that it does not pay to reload them with appellee's plugs. However, for reasons hereafter stated, we think that the economic feasibility of reloading the cartridges is immaterial, and that there is therefore no "genuine issue as to any material fact" in this case.

It is well settled that in certain cases a motion for summary judgment is a proper way in which to dispose of an action for patent infringement. See Park-In-Theatres, Inc. v. Perkins, 9 Cir., 1951, 190 F.2d 137; Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 1949, 176 F.2d 604; Vermont Structural Slate Co.

v. Tatko Bros. Slate Co., 2 Cir., 1956, 233 F.2d 9.

Appellant, however, says that the court made no express finding that there was no genuine issue as to any material fact and invokes the "technical rule" that absent such a finding the judgment must be reversed. Apparently, the notion that there is such a technical rule started with an impatient statement of Judge Fee, citing no authority, in New and Used Auto Sales v. Hansen, 9 Cir., 1957, 245 F.2d 951, a case in which this court found that there were genuine issues to be tried. There is similar, but somewhat weaker, language by Judge Mathews in Sequoia Union High School Dist. v. United States, 9 Cir., 1957, 245 F.2d 227. These dicta were repeated in the form of an alternative holding in Neff Instruments Corp. v. Cohu Electronics, Inc., 9 Cir., 1959, 269 F.2d 668, 674. Yet in each case the court was at pains to show that there were, in fact, genuine issues of material fact to be tried. How much repetition of dicta is required to make a holding, we need not here decide.

■■ The court is not required to make any finding in granting a motion for summary judgment. Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899, 902. Such findings, however, are sometimes made, and when made they are helpful to the appellate court. In this case the court wrote an opinion and also made formal findings of fact and conclusions of law. The latter do not contain the ritual statement that there is no genuine issue as to any material fact. The opinion states: "Defendant [appellee] urges that all the facts hereinabove stated are undisputed and that they establish noninfringement. With this conclusion we agree." We think that, unless litigation is to be reduced to mere verbal ritualism, a prospect that we do not regard with any relish, this statement is equivalent to a statement that there is no genuine issue as to any material fact.

Appellant asserts that what appellee does is both direct and contributory infringement. These are defined in 35 U.S.C. § 271 as follows:

"(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

"(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

"(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

■■ The validity of appellant's assertion depends upon whether what appellee does is a direct infringement. "In a word, if there is no infringement of a patent, there can be no contributory infringer." (Mercoid Corp. v. Mid-Continent Co., 1944, 320 U.S. 661, 677, 64 S.Ct. 268, 276, 88 L.Ed. 376 (concurring opinion), quoted and followed in Aro Mfg. Co. v. Convertible Top Replacement Co., 1961, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592). The Aro decision holds that § 271(c) does not change this rule, becoming operative, by its own terms, only where the article involved is for use in an infringement of the patent. Is there direct infringement? We think not.

In the January Term in 1850 there came before the Supreme Court the case of Wilson v. Simpson, 50 U.S. (9 How.) 108 [109], 13 L.Ed. 66. The case involved a patented planing machine. According to the opinion, the inventor of the machine had so arranged certain cutter-knives as a part of its combination that the machine could not be continued in use without a succession of knives at short intervals. The knives were unpatented. It was held that the

patent was not infringed by a replacement of the knives. The Court said:

"Nothing is gained against our conclusion by its being said that the combination is the thing patented, and that, when its intended result cannot be produced from the deficiency of a part of it, the invention in the particular machine is extinct. It is not so. Consisting of parts, its action is only suspended by the want of one of them, and its restoration reproduces the same result only, without the machine having been made anew. Of course, when we speak of the right to restore a part of a deficient combination, we mean the part of one entirely original, and not of any other patented thing which has been introduced into it, to aid its intended performance." (Pp. 123–124 of 50 U.S. [9 How.], 13 L.Ed. 66)

This decision has been followed ever since.

Morgan Envelope Co. v. Albany Paper Co., 1894, 152 U.S. 425, 14 S.Ct. 627, 38 L.Ed. 500, involved the right of the defendant to sell, to purchasers of the plaintiff's patented contraption for dispensing toilet paper, rolls of toilet paper, unpatented and unpatentable, designed to be used in the plaintiff's dispenser. The language of the opinion is particularly pertinent here:

"But without expressing an opinion upon this point, we think the facts of this case fail to sustain the charge of infringement. Defendants neither made, sold, nor used the mechanism invented by Hicks to serve out the toilet paper, except as they purchased it of the patentee, and the only acts proven against them were in selling oval rolls of paper of their own manufacture, with fixtures manufactured and sold by the plaintiff, in combination with its [the plaintiff's] paper to persons other than the defendants, the fixtures having been obtained by defendants from the orginal purchasers of the patented combination; and also of selling oval rolls of paper of defendant's own manufacture to persons who had previously purchased fixtures and paper from the plaintiff, with the knowledge and intention that the paper so sold was to be used in connection with the plaintiff's fixtures." (P. 431 of 152 U.S., p. 630 of 14 S.Ct., 38 L.Ed. 500)

\*    \*    \*    \*    \*    \*

"The real question in this case is, whether, conceding the combination of the oval roll with the fixture to be a valid combination, the sale of one element of such combination, with the intent that it shall be used with the other element, is an infringement. We are of opinion that it is not. There are doubtless many cases to the effect that the manufacture and sale of a single element of a combination, with intent that it shall be united to the other elements, and so complete the combination, is an infringement. Saxe v. Hammond, Holmes, 456; Wallace v. Holmes, 9 Blatchford, 65; Barnes v. Straus, 9 Blatchford, 553; Schneider v. Pountney, 21 Fed.Rep. 399. But we think these cases have no application to one where the element made by the alleged infringer is an article of manufacture perishable in its nature, which it is the object of the mechanism to deliver, and which must be renewed periodically, whenever the device is put to use." (Pp. 432–433 of 152 U.S., p. 630 of 14 S.Ct., 38 L.Ed. 500)

In Heyer v. Duplicator Mfg. Co., 1923, 263 U.S. 100, 44 S.Ct. 31, 68 L.Ed. 189, the Court held, in reliance upon the Wilson case, that the purchasers of a patented duplicating machine, one element of which is a band of gelatin to which is to be transferred the print to be multiplied, had a right to replace the gelatin bands from any source that they chose. As the Court said: "If they have that right the defendant in selling to them does no wrong."

The latest decision of the Supreme Court is Aro Mfg. Co. v. Convertible Top Replacement Co., supra, 1961, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592. Convertible had a combination patent on a folding top for convertible models of automobiles. The fabric top normally wore out long before the rest of the mechanism. Aro manufactured and sold replacement tops. The Court said:

"The principal, and we think the determinative, question presented here is whether the owner of a combination patent, comprised entirely of unpatented elements, has a patent monopoly on the manufacture, sale or use of the several unpatented components of the patented combination." (Pp. 338–339 of 365 U.S., p. 600 of 81 S.Ct., 5 L.Ed.2d 592)

\* \* \* \* \* \*

"Since the patentees never claimed the fabric or its shape as their invention, and the claims made in the patent are the sole measure of the grant, the fabric is no more than an unpatented element of the combination which was claimed as the invention, and the patent did not confer a monopoly over the fabric or its shape." (Pp. 339–340 of 365 U.S., p. 601 of 81 S.Ct., 5 L.Ed.2d 592)

\* \* \* \* \* \*

"It follows that petitioners' manufacture and sale of the fabric is not a *direct* infringement under 35 U.S.C. § 271(a) \* \* \*."

The Court then held that there can be no contributory infringement under § 271(c) unless, had the purchaser of the product done the same thing, it would be a direct infringement.

"The determinative question, therefore, comes down to whether the car owner would infringe the combination patent by replacing the worn-out fabric element of the patented convertible top on his car, or even more specifically, whether such a replacement by the car owner is infringing 'reconstruction' or permissible 'repair'.

"This Court's decisions specifically dealing with whether the replacement of an unpatented part, in a patented combination, that has worn out, been broken or otherwise spent, is permissible 'repair' or infringing 'reconstruction,' have steadfastly refused to extend the patent monopoly beyond the terms of the grant." (P. 342 of 365 U.S., p. 602 of 81 S.Ct., 5 L.Ed.2d 592)

\* \* \* \* \* \*

"\* \* \* For if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." (P. 344 of 365 U.S., p. 604 of 81 S.Ct., 5 L.Ed.2d 592)

\* \* \* \* \* \*

"No element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be.

\* \* \* \* \* \*

"We hold that maintenance of the 'use of the whole' of the patented combination through replacement of a spent, unpatented element does not constitute reconstruction." (Pp. 345–346 of 365 U.S., p. 604 of 81 S.Ct., 5 L.Ed.2d 592)

(Citations and footnotes omitted)

The Court cited and relied, *inter alia,* upon Wilson, Morgan Envelope, and Heyer. We do not see how it can be maintained, under the Aro decision, that the intent or understanding of the patentee or licensee, or the "essence" or "heart" of the combination, is any longer controlling, at least in a case such as this, where one element of the combination is necessarily removed and finally used, while the other remains and is capable of further use.

We think that the principles of the foregoing cases are applicable here.[1] They are reinforced by the cases that hold that a patentee cannot, by a restricted license, require a purchaser of the patented article, which is designed to use certain products that are not themselves patented, to use only such of those products as are produced or sold by the patentee. (See Motion Picture Patents Co. v. Universal Film Co., 1917, 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871; United States v. Univis Lens Co., 1942, 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408; Mercoid Corp. v. Mid-Continent Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corp. v. Minneapolis-Honeywell Co., 1944, 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396).

In the light of the foregoing authorities, we think that appellant's contention that it has a right to prevent appellee from selling the plugs for use in its cartridges because, as it claims, such use is not economically feasible, is immaterial and does not raise any triable issue in this case. We think too that the Cotton-Tie case (Cotton-Tie Co. v. Simmons, 1892, 106 U.S. (16 Otto) 89, 1 S.Ct. 52, 27 L.Ed. 79), if it still has validity, is of no help to appellant. There the defendant reconstructed, from the patentee's materials, the patentee's combination, and this was held to be an infringement. Later cases have distinguished the case, relying in part upon the fact that the patentee in that case marked its product "licensed to use once only." In the light of subsequent decisions, we doubt if such a restrictive license would be effective today. We need not decide whether later decisions have, by implication, overruled the Cotton-Tie case; at the least they have given it a very narrow effect.

From what we, have said, it must be apparent that we do not agree with the decision of the Court of Appeals for the Fifth Circuit in Fromberg, Inc. v. Thornhill, 1963, 315 F.2d 407. In that case,

Judge Brown finds inducement of infringement (§ 271(b), supra) of the Fromberg patent in conduct similar to that of appellee. He says: "The principal point of this inquiry is whether, when sold by the Patentee, it is reasonably contemplated that the device will be repeatedly used. * * * Designed, manufactured and sold as a unit, it is likewise used as a unit. Once the rubber plug is extruded into the tire, that part cannot ordinarily be used again. Nor is it expected that the metal tube will be. It has a single-shot function and purpose for a one-time use." (Pp. 412–413 of 315 F.2d) He concludes that the reloading of Fromberg cartridges is infringement, because it produces the identical combination covered by the patent, relying primarily upon the Cotton-Tie case.

We must respectfully disagree. The identical combination was also produced in Aro. If by "expected" Judge Brown refers to the patentee's desire or hope, we might agree that such is his expectation, but we must add that neither the desire nor the hope of the patentee in this regard either is or ought to be material, much less controlling. No one should be required to probe the mind of a patentee in order to know whether he is infringing. Viewing the matter objectively, that is, looking at the patent and the patented combination without adding an assumption as to what may be in the mind of the patentee, we find nothing to indicate such an expectation. There can be no doubt that the rubber plug has a "single-shot function and purpose for a one-time use." It is to be removed from the combination and left permanently in the tire. Not so with the tube. It is intended to be, and is, removed from the tire, and is then capable of being reused. Where, then, as to it, is the "single-shot function" or "one-time use?" Judge Brown does not tell us, and we cannot find either of them.

Affirmed.

---

1. There are several decisions of Circuit Courts that are in accord. See, e. g., Micromatic Hone Corporation v. Mid- West Abrasive Co., 6 Cir., 1949, 177 F. 2d 934; Westinghouse Electric & Mfg. Co. v. Hesser, 6 Cir., 1942, 131 F.2d 406.