**ALUMINUM EXTRUSION COMPANY, a corporation, Plaintiff,**

v.

**SOULE STEEL COMPANY, a corporation, Defendant.**

**No. 65–1423–IH.**

United States District Court · C. D. California.

Oct. 27, 1966.

Mahoney & Hornbaker, Thomas P. Mahoney & Robert D. Hornbaker, Santa Monica, Cal., for plaintiff.

Townsend & Townsend, San Francisco, Cal., Thelen, Marrin, Johnson & Bridges, Los Angeles, Cal., for defendant.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

HILL, District Judge.

In this action, Plaintiff, Aluminum Extrusion Company, claims that Defendant, Soule Steel Company, infringed a patent for a type of window construction and seeks damages and an injunction against future infringement.

■ Defendant now moves under Civil Rule 56 for summary judgment. The affidavits filed in support of the motion disclose that there is no genuine issue as to any material fact relating to the issue of infringement. As will also be shown, infra, uncontradicted facts presented in the affidavits show that Plaintiff is not entitled to relief. In such a case, summary judgment is clearly appropriate.

1. Plaintiff's answer to Interrogatory No. 1 of Defendant's First Interrogatories.

2. Attached to the Affidavit of James Bedford dated May 16, 1966, incorporated by reference in support of the instant motion.

Henderson v. A. C. Spark Plug Division of General Motors Corp., 366 F.2d 389 (9th Cir. 1966); Fromberg, Inc. v. Gross Mfg. Co., 328 F.2d 803 (9th Cir. 1964).

## I. THERE HAS BEEN NO DIRECT INFRINGEMENT.

■■ The only act of direct infringement which Plaintiff alleges against Defendant is Defendant's installation of windows in the Engineering Building at San Fernando State College.[1] Defendant did not build the entire building and was only a subcontractor in its construction. The uncontradicted time records of Defendant [2] demonstrate that no work was done on the building by Defendant after August 22, 1965. The patent involved here was not issued until September 28, 1965. Except where there is a promise not to disclose confidential information about an invention (which is not the case here), there can be no infringement of a patent before the patent is issued.[3]

■ Plaintiff contends that there is a disputed material issue of fact on the issue of direct infringement arising from Defendant's receipt of money for its work after the issue date of the patent. While Plaintiff does not challenge Defendant's time records, its affidavits show that Defendant did not receive the final payment under its subcontract for the building until December 13, 1965. It is uncontradicted that Defendant's work on the building was finished before the patent issued. Although no authority on the point has been found, I hold that the date that work ceased is the determinative date and that receipt of the final payment for the work after the issue date of the patent would not constitute infringement. So there is no dispute of material fact on the issue of direct infringement, and I find that Defendant did not directly infringe.

3. 35 U.S.C. § 271(a); Gayler v. Wilder, 10 How. (51 U.S.) 477, 13 L.Ed. 504 (1850); Tom Lockerbie, Inc. v. Fruhling, 207 F.Supp. 648 (E.D.Wis.1962); Krizman v. Bouchard, 142 F.Supp. 269 (N.D.Ind.1956); 3 Deller, Walker on Patents, § 450 (1937).

## II. THERE HAS BEEN NO INDUCEMENT TO INFRINGE.

Plaintiff contends that even if there has been no direct infringement, the summary judgment should not be granted because of the patent indemnity agreement included in Defendant's subcontract. As one of the terms of its subcontract on the Engineering Building, executed in September, 1963 (more than two years before the patent issued), Defendant promised to "indemnify and hold Contractor harmless against any claim, suit or action, or any alleged violation or infringement of patent rights which may be made against Contractor by reason of the use in connection with or as part of the performance of the work or the furnishings of the materials hereunder, of anything which is now or may hereafter be covered by patent, copyright or trademark * * *" This appears to be a standard type of indemnity provision commonly used in commercial transactions. Plaintiff now claims that such promise was and is an inducement to the contractor and the owner to infringe Plaintiff's patent.

■■ While inducement to infringe is itself infringement (35 U.S.C. § 271 (b)), "inducement has connotations of active steps knowingly taken—knowingly at least in the sense of purposeful, intentional, as distinguished from accidental or inadvertent." Fromberg, Inc. v. Thornhill, 315 F.2d 407, 411 (5th Cir. 1963); accord, Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622 (7th Cir. 1965). To the same effect is American Bank Protection Co. v. Electric Protection Co., 181 F. 350 (C.C.D.Minn. 1910), appeal dismissed, 184 F. 916 (8th Cir. 1910), cert. denied, 220 U.S. 619, 31 S.Ct. 723, 55 L.Ed. 612 (1911), which stands for the proposition that an indemnitor is not liable as inducing infringement unless the agreement was used "for the purpose of inducing infringement". Our Circuit Court of Appeals has cited American Bank with apparent approval.

Reliance Construction Co. v. Hassam Paving Co., 248 F. 701, 704 (9th Cir. 1918).

■ In the case at bar, the act which Plaintiff claims as the inducement to infringe, i. e. the indemnity agreement, occurred more than two years before the patent issued. Certainly this act cannot be characterized as "purposeful", "intentional", or "for the purpose of inducing infringement" within the requirements of the authorities cited supra. The indemnity agreement runs to the contractor alone. The only act which it can be said to have induced is the contractor's use of Defendant's window system in constructing the building. The contractor's act was completed before the patent issued, so it was not an infringement. Just as there can be no liability for contributory infringement unless there is an infringement,[4] it would seem clear that there can be no liability for inducing infringement unless the act induced is an infringement.

But, says Plaintiff, the owners of the building continue to use it and its continued use is an infringement by them. It stretches reason too far to construe Defendant's promise to the contractor as an inducement to the owners (who are not even mentioned in the indemnity agreement) to continue to use their building. When the windows were completed, there was no infringement. All the owners have done is occupy and use a building which did not infringe when the windows were installed. Under the facts before me, I cannot regard Defendant's indemnity agreement as an inducement to the owners to infringe or as otherwise actionable.

Plaintiff cites American Telephone & Telegraph Co. v. Radio Audion Co., 281 F. 200 (D.Del.1922), aff'd, 284 F. 1020 (3d Cir. 1922), and Reliance Construction Co. v. Hassam Paving Co., supra. Although indemnitors were held liable in both cases as having induced infringement, both are distinguishable. In *American Telephone* the indemnity agreement

---

4. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); Fromberg, Inc. v. Gross Mfg. Co., 328 F.2d 803 (9th Cir. 1964); Fromberg, Inc. v. Thornhill, 315 F.2d 407 (9th Cir. 1963).

was clearly executed after the patent issued. In *Reliance* all of the facts, particularly the operative dates, are not set out in the opinion. However, it must be assumed that the indemnity was likewise executed after the patent issued; the patent issued in 1907 and the trial was apparently held in 1916.

## III. INJUNCTION AGAINST FUTURE INFRINGEMENT.

▮▮▮▮ Plaintiff next argues that summary judgment is precluded since it has a right to injunction against future infringement.[5] A court may grant an injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent * * *." 35 U.S.C. § 283. But the court will not exercise this power when there is no substantial threat of future infringement. Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc., 367 F.2d 236, 9th Circuit, September 29, 1966; Hamilton Standard Propeller Co. v. Fay-Egan Mfg. Co., 101 F.2d 614 (6th Cir. 1939). A past infringement may well indicate a sufficient threat of future infringement, but we have no past infringement in the case before us. Without past infringement by the Defendant, even an expressed intention to manufacture an infringing item is not a sufficient threat because there is "no actual controversy". McGraw-Edison Co. v. Preformed Line Products Co., 362 F.2d 339 (9th Cir. 1966).[6]

But here there is no showing of an expressed intention to again manufacture the infringing item. In fact, the contrary is clearly shown. The uncontradicted affidavits of Defendant's General Manager dated May 16, 1966, and August 25, 1966, indicate that Defendant has not made, used, sold, or offered for sale any infringing structure subsequent to the issue date of the patent "nor proposes to offer such a structure for sale".

Plaintiff maintains that Defendant's promise in its September, 1963, subcontract on the Engineering Building "to replace * * * any or all materials adjudged defective or improperly installed * * * during a period of one year from completion and acceptance of the entire project" *is* a sufficient threat of infringement to give rise to an "actual controversy". I must assume that this promise is still in effect. Defendant does not claim that the one-year period has expired. Plaintiff has not shown that it has not expired. But even so assuming, Plaintiff has no right to an injunction under the facts here.

▮▮▮▮ In a case where a structure infringes when orginally constructed, any repair of that structure is an infringement. Aro Mfg. Co. v. Convertible Top Replacements Co., 377 U.S. 476, 84 S.Ct.

5. I am aware from a companion case that Plaintiff assigned all rights to the instant patent to others after the instant action was filed. At first blush it would appear that assignors of a patent who no longer have any ownership interest in it would not be entitled to an injunction since the injunction operates prospectively only. Boomer v. United Power Press Co., 3 Fed.Cas. 868 (No. 1,638) (C.C. S.D.N.Y.1875); Wheeler v. McCormick, 29 Fed.Cas. 905 (No. 17,499) (C.C.S.D. N.Y.1873). However, this point has not been argued and I have failed to find any modern authority on it in the patent field. I therefore do not rest the decision on this ground. As will be seen from the text, even assuming that an assignor has a right to injunctive relief in a proper case, no right to injunction exists here.

Incidentally, there is some authority outside the patent field which indicates that no injunction would be granted to an assignor. Mendez v. Bowie, 118 F.2d 435 (1st Cir. 1941), cert. denied, 314 U.S. 639, 62 S.Ct. 76, 86 L.Ed. 513 (1941); Darling Baby Products Corp. v. Wearite Specialty Co., 4 F.R.D. 14 (S.D.N.Y. 1943). And I do not read Federal Civil Rule 25(c) as conferring a right to an injunction on an assignor in derogation of the principles set forth in those cases.

6. The contrary statement in Neff Instrument Corp. v. Cohu Electronics, Inc., 269 F.2d 668, 673 (9th Cir. 1959), is a dictum and appears to be impliedly overruled by the holding in *McGraw-Edison*.

1526, 12 L.Ed.2d 457 (1964). But the Engineering Building in question did not infringe when constructed because the patent had not yet issued. In such a case, only "reconstruction", not "repair", will constitute infringement. Wilbur-Ellis Co. v. Kuther, 377 U.S. 422, 84 S.Ct. 1561, 12 L.Ed.2d 419 (1964). Defendant's uncontradicted affidavits show that, thus far, no repairs have been required and that, based on Defendant's past experience with structures similar to the one in the Engineering Building, any repairs under its promise to repair would likely be minor, consisting of replacing broken window panes, re-caulking, et cetera. Such minor repairs, even if they may be required in the future, could not be considered "reconstruction", so would not be infringements. Thus, the possibility that the agreement might be invoked is not sufficient to raise an "actual controversy" within the requirements of *McGraw-Edison Co.*, supra, and is not sufficient to require trial of this action. It may be disregarded as *de minimis*.

As stated by the Second Circuit Court of Appeals:

"[T]here comes a point where what may be literally a wrong, is of too trifling importance to justify the intervention of a court. This is such a case; we will not enjoin the defendant's machine for a detail, obviously so useless in function." Condenser Corp. of America v. Micamold Radio Corp., 145 F.2d 878, 880 (2d Cir. 1944), cert. denied, 324 U.S. 861, 65 S.Ct. 869, 89 L.Ed. 1418 (1945). Accord, Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc., supra; Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622 (7th Cir. 1965), cert. denied, 382 U.S. 828, 86 S.Ct. 828, 15 L.Ed.2d 73 (1965).

Since, on the uncontradicted facts before us, Defendant has not infringed, nor is sufficiently threatening to infringe, Defendant's motion for summary judgment should be granted.

It is therefore ordered that judgment be entered in favor of Defendant. Neither party is to recover costs.