NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 4 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LESLIE HOFFMAN, | No. 16-56663 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-01530-R-AJW |
| v. | |
| SCREEN ACTORS GUILD PRODUCERS PENSION PLAN; BOARD OF TRUSTEES SCREEN ACTORS GUILD PENSION PLAN; DOES, 1 through 10, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted April 12, 2018
Pasadena, California

Before: BEA and MURGUIA, Circuit Judges, and BASTIAN,[**] District Judge.

Plaintiff-Appellant Leslie Hoffman appeals the decision of the district court,

affirming the retroactive termination of her disability benefits by the Screen Actors

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Stanley Allen Bastian, United States District Judge for the Eastern District of Washington, sitting by designation.

Guild-Producers Pension Plan, a defined benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, and the Board of Trustees Screen Actors Guild Pension Plan, the plan's administrator (collectively, "the Plans"). We have jurisdiction under 28 U.S.C. § 1291. Because we conclude that the district court erred in granting the Plans' motion for summary judgment, we reverse and remand.

The Plans manage a defined benefit plan subject to ERISA. In order to receive benefits pursuant to the terms of the plan, an individual must be "totally disabled": (1) receiving Social Security Disability Benefits; and (2) "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to continue for the individual's lifetime." Hoffman is a retired stunt actor who ceased work in May 2000 due to numerous physical injuries and severe depression. On February 20, 2004, Administrative Law Judge Robin Wright found Hoffman to be totally disabled by way of severe major depression since February 25, 2002, and awarded her Social Security Disability Benefits. In 2004, Plaintiff likewise applied for disability benefits under the plan. Based on reports of Plaintiff's treating physicians Richard Handler, M.D., Hal Rubin, M.D., Ruth Cassin, M.D., and the Plans' own medical director, Robert Shakman, M.D., who all found Plaintiff

2

totally disabled as a result of various physical and psychological injuries, Plaintiff received disability benefits.

In 2008, Plaintiff elected to convert her disability pension into an occupational disability pension. In 2010, the Plans wrote that Dr. Shakman had reviewed all of the medical documentation and determined Plaintiff's disability to be a result of severe major depression and not occupational in nature. The decision was affirmed on administrative appeal, and Plaintiff filed suit. *Hoffman v. Screen Actors Guild-Producers Pension Plan, et al.*, No. CV 10-0613 GAF (AJWx), 2012 WL 12887076 (C.D. Cal. May 3, 2012). The district court affirmed the denial of benefits on summary judgment and rejected Plaintiff's contention that her disability was due, in part, to physical impairments. *Id.* Plaintiff appealed, and this Court reversed the district court's grant of summary judgment in favor of the Plans for violations of ERISA claims procedures and remanded to the Plans for further proceedings. *Hoffman v. Screen Actors Guild Producers Pension Plan, et al.*, 571 Fed. Appx. 588 (9th Cir. 2014). We directed the Plans that Plaintiff was entitled to a second medical opinion on administrative appeal and a fully developed record resulting therefrom. *Id.* at 591.

On remand, the Plans again denied Hoffman's application for occupational disability benefits. This prompted a review of Hoffman's initial application for

disability benefits for which she had been receiving benefits since 2002. The Plans concluded that Hoffman had not been under a disability pursuant to the terms of the plan and terminated her regular disability pension retroactively from January 1, 2005. The Plans consequently notified Hoffman that her disability pension payments would cease effective August 1, 2015, and sought to recoup alleged overpayment of benefits in the amount of $123,827.50 plus $8,457.72 interest. The decision was upheld on administrative appeal, and Hoffman filed a second complaint under ERISA challenging the retroactive termination of her disability benefits. The district court granted the Plans' motion for summary judgment and entered judgment in their favor. *Hoffman v. Screen Actors Guild Producers Pension Plan et al.*, No. 2:16-cv-01530-R-AJW, ECF Nos. 45, 49.

Reviewing de novo, *Nolan v. Heald Coll.*, 551 F.3d 1148, 1150 (9th Cir. 2009), we conclude that the district court erred in failing to address all of Hoffman's alleged procedural defects, which should have been considered as factors that tempered the court's abuse of discretion review. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006) (en banc).

Here, the Plans had discretionary authority to determine Hoffman's eligibility for benefits, and it is undisputed that the Plans' denial of benefits is therefore reviewed by the district court for abuse of discretion. *See id.* at 963.

4

Where there are "procedural irregularities" in the claim review process, the abuse of discretion standard that is applied by the district court will be "tempered" by heightened skepticism. *Id.* at 959, 971. The district court must consider all the circumstances in determining how much weight to assign to a conflict or procedural irregularity. *Id.* at 968, 972 ("A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." (citations omitted)). The nature and scope of the alleged violations will significantly affect the standard of review applied by the district court. *See id.* "[W]hen a plan administrator's actions fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted." *Id.* Alternatively, "[w]hen an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Id.* (internal quotation marks and citations omitted).

Hoffman advanced new evidence of multiple procedural irregularities in the Plans' review of her application for benefits, including the Plans' failure to consider all relevant evidence, such as tax records, and to make available evidence

5

relevant to the Plans' decision, such as the administrative record from prior proceedings, audio recordings of meetings, and a medical report by the Plans' medical director. Although the district court concluded that there was sufficient evidence of a procedural conflict to merit a heightened abuse of discretion review, it only referenced, without explanation, one of these alleged irregularities—the Plans' failure to disclose the administrative record to Plaintiff during the course of the appeal. The district court went on to conclude, again without explanation, that there was no evidence of malice, self-dealing, or a parsimonious claims-granting history on the part of the Plans, and that its level of skepticism was, accordingly, not extremely high. The findings of fact entered by the district court, which were adopted verbatim from the Plans' proposed findings and conclusions, similarly do not include findings about any of the alleged procedural defects.[1] The district court's failure to consider all of the alleged procedural defects before determining the level of skepticism was error. *See Abatie*, 458 F.3d at 969.

Moreover, because the alleged procedural defects involved disputed issues of material fact, the district court's grant of summary judgment was improper.

---

[1] Although it is not error for the district court to state the *undisputed* facts in the form of findings of fact and conclusions of law, *see Fromberg, Inc. v. Gross Mfg. Co.*, 328 F.2d 803, 806 (9th Cir. 1964), in reality, "there is no such thing as . . . findings of fact, on a summary judgment motion." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (quoting *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997)).

Ordinarily, where abuse of discretion review is appropriate, the district court's review is limited to the administrative record and the traditional rules of summary judgment do not apply. *Nolan*, 551 F.3d at 1154. In such cases "a motion for summary judgment is merely the conduit to bring the legal question before the district court . . . ." *Id.* (citing *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999), *abrogated on other grounds by Abatie*, 458 F.3d at 963). Where, as here, however, the claimant seeks to admit extrinsic evidence in order to prove the existence of procedural irregularities, then the court may review the additional evidence under the traditional summary judgment standards. *Id.* at 1150; *see* Fed. R. Civ. P. 56(c). The new evidence is reviewed de novo in the light most favorable to plaintiff. *Nolan*, 551 F.3d at 1150.

The record here reveals numerous factual disputes not addressed by the district court in either the summary judgment order or the court's findings of fact.[2] For example, although the Plans repeatedly requested that Hoffman provide all of her tax records to the Board of Trustees, the Plans later claimed that they only reviewed a "summary" of these records, and retroactively denied Hoffman's benefits in part on the basis that Hoffman was holding herself out to be available to

---

[2] The adoption of the proposed findings of facts on summary judgment, in and of itself, may be suggestive of factual disputes. *See U. S. for Use & Benefit of Austin v. W. Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964); *Trowler v. Phillips*, 260 F.2d 924, 926 (9th Cir. 1958).

work. Similarly, the Plans relied on a report from the Plans' new medical director, who reviewed the record and determined that Hoffman was not disabled. That report was inadvertently omitted from the Rule 26, Fed. R. Civ. P., disclosure of the Administrative Record, though it was later supplemented at an unspecified date. Yet, there is nothing in the record showing that Hoffman received that report prior to the decision. In contrast, Hoffman provided voluminous tax records to the Plans to show she had not been paid for work since her disability began. The Plans acknowledged receiving these, but did not include them in the administrative record, suggesting that the Plans did not review them. Similarly, the Plans claimed they did not record Hoffman's hearing on appeal and denied Hoffman's request to provide any such recordings. However, the Plans later filed a motion for attorneys' fees for 3.8 hours for drafting memorandum regarding duty to disclose recording at trustees' meetings. Finally, we note that the court's findings of fact do not explain the basis for the district court's conclusion that there was no evidence of malice, self-dealing, or a parsimonious claims-granting history on the part of the Plans.

On remand, the district court must address these outstanding factual questions, which will bear upon the degree of skepticism with which the district judge reviews the Plans' decision to deny Hoffman's claim for benefits. *Abatie*, 458 F.3d at 959. To the extent there are factual disputes, the district court must

8

resolve those through a bench trial under Rule 52(a), Fed. R. Civ. P., before granting judgment on Hoffman's claim for wrongful termination of benefits under ERISA section 502, 29 U.S.C. § 1132(a)(l)(B). *Nolan*, 551 F.3d at 1154. Viewing new evidence through the lens of a bench trial is not merely a matter of form; it may lead the judge to a wholly different conclusion about the merits of the case. *See Kearney*, 175 F.3d at 1095 ("The process of finding the facts 'specially,' as that rule requires, sometimes leads a judge to a different conclusion from the one he would reach on a more holistic approach.").

Because the district court erred in its denial of summary judgment on Hoffman's section 502 claim, the district court also erred in summarily denying Hoffman's claims that the Plans failed to provide full and fair review under ERISA section 503, 29 U.S.C. § 1133(2). *See Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004) ("In order to challenge a benefit plan's failure to comply with ERISA's disclosure requirements, the employees must 'have a colorable claim that (1) [they] will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.'"). We accordingly remand to the district court for further proceedings consistent with this disposition.

**REVERSED and REMANDED**.

*Hoffman v. Screen Actors Guild Producers Pension Plan; et al.;* No. 16-56663

BEA, Circuit Judge, dissenting:

This case requires us to determine whether the district court erred in granting summary judgment to the Screen Actors Guild Producers Pension Plan (the "Plan") because it found the Plan did not abuse its discretion in denying Appellant Leslie Hoffman's disability benefits application. Because I think the district court properly considered the evidence and correctly decided that the Plan did not abuse its discretion, I respectfully dissent.

## I

The Plan is a defined benefits plan governed by the Employee Retirement Income Security Act ("ERISA"). ERISA seeks to protect employees by establishing minimum standards for private pension and health plans, including requiring plans to establish a grievance and appeals process for plan participants who apply to receive benefits. ERISA also encourages private employers to fund employee benefits plans by allowing employers to deduct their contributions from taxable income and to interpret the terms of the benefits plans. Accordingly, ERISA cases generate a peculiar situation, particularly with respect to how courts review plan administrators' decisions.

Here, the Plan's Board of Trustees (the "Board") administers the Plan, which gives the Board discretion to interpret the terms of the plan. Hoffman is a retired

1

stunt actor and coordinator. Hoffman initially ceased working as a stunt actor and coordinator in 2000. In 2003 and 2004, Hoffman was repeatedly hospitalized for depression and, in 2004, Dr. Ruth Cassin opined that Hoffman was disabled due to her depression.

On February 20, 2004, Hoffman was awarded Social Security Disability Benefits based on her depression. Hoffman then applied for a disability pension from the Plan. The Plan's in-house doctor, Dr. Shakman, approved her application and she was granted a disability pension.

In 2008, Hoffman sought to convert her disability pension into an occupational disability pension, which would entitle her to health benefits not available under the regular disability pension. To obtain an occupational pension, Hoffman was required to show that her disability—that is, her depression—occurred during the course of her employment. The Plan denied Hoffman's request to convert her disability pension into an occupational disability pension. Hoffman appealed the Plan's decision to the Benefits Committee, which affirmed the Plan's denial of benefits, again relying on Dr. Shakman.

Hoffman sued the Plan, claiming it had violated ERISA by wrongfully denying her benefits. The district court granted the Plan's motion for summary judgment, and Hoffman appealed to this Court (the "First Appeal"). On the First Appeal, we reversed the district court's grant of summary judgment and remanded

2

with instructions to the district court to require the Plan to obtain a second medical opinion to provide Hoffman with a full and fair review of her claim. *Hoffman v. Screen Actors Guild-Producers Pension Plan*, 571 F. App'x 588, 591 (9th Cir. 2014). At that point, the case was remanded to the Plan for further proceedings.

In 2015, during the remand, the Plan discovered what it believed to be evidence that Hoffman was not actually disabled and had been working as a stuntwoman and stunt coordinator after 2004. This evidence included the fact that Hoffman received credits in a number of productions after 2004 and held herself out as a working stuntwoman and coordinator on various websites and social media platforms.

The Plan's Benefits Committee sent Hoffman's file, which contained her medical records, to three independent medical consultants—a board certified psychologist, a board certified orthopedic surgeon, and a board certified neurologist. The orthopedic surgeon and neurologist opined that Hoffman had never been disabled and the psychologist opined that Hoffman was not currently disabled and likely had not been disabled since late 2004.

The Benefits Committee then conducted a review of Hoffman's disability pension and determined, based on the opinion of the medical consultants and evidence that Hoffman had been holding herself out to work as a stunt coordinator after 2004, that Hoffman was not totally disabled within the meaning of the plan and

3

had not been totally disabled after 2004. The Benefits Committee terminated Hoffman's disability pension, retroactive to January 1, 2005.

Hoffman filed an administrative appeal with the Plan. New members of the Benefits Committee who were not involved in Hoffman's original application heard Hoffman's appeal. Additionally, the Benefits Committee forwarded Hoffman's file to a new board certified psychologist, a new board certified orthopedic surgeon, and a new board certified neurologist. The orthopedic surgeon and psychologist concluded that Hoffman was not disabled. The neurologist concluded that Hoffman was totally disabled beginning in September 2012, but went on to state that she had "no physical neurological restrictions or deficits" and "would be able to work in any position that did not require [Hoffman] to engage in rapid word reading or other speed processing."

Hoffman submitted medical evidence from a number of doctors to support her claim of disability, including her treating physician. Additionally, Hoffman submitted a declaration stating that she had not been paid for work on the films she received credits for; submitted evidence from former co-workers that working on amateur films did not necessarily indicate an ability to work as a stunt coordinator

4

on paid productions; and submitted her tax returns for the relevant time period, which showed no income from the film industry other than residuals.[1]

The Benefits Committee reviewed the evidence in the administrative record, including the new medical opinions regarding Hoffman's status. In a three-page decision, the Benefits Committee upheld the termination of Hoffman's disability pension, retroactive to January 1, 2005, based exclusively on the opinion of the medical experts the Plan had retained. Hoffman filed a complaint against the Plan in the Central District of California alleging that she had been wrongfully denied benefits and asserting a claim under section 502(c) of ERISA, alleging that the Plan had failed to provide her with documents she had requested. The district court granted summary judgment to the Plan, and Hoffman appealed.

## II

We review a district court's decision to grant summary judgment and the district court's "application of the standard of review to decisions by fiduciaries in ERISA cases" de novo. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc); *Farr v. U.S. W. Commc'ns Inc.*, 151 F.3d 908, 913 (9th Cir. 1998).

---

[1] We cannot confirm whether Hoffman's tax returns demonstrate that she did not receive income from her work on various film projects because the tax returns are not included in the administrative record, but the Plan does not dispute Hoffman's account of the content of the tax returns.

5

As a default, the district court reviews decisions to deny benefits under an ERISA plan de novo. *Abatie*, 458 F.3d at 963.[2]  However, when an ERISA plan contains a provision that gives the trustees discretion to interpret the terms of the plan, district courts review decisions to deny disability benefits applications for an abuse of discretion. *Id.*  Here, the parties and the district court agree that the Plan's organizing documents give the Board discretion to interpret the terms of the Plan, and thus the district court was correct to apply an abuse of discretion standard.

As in other contexts, an abuse of discretion with respect to a factual matter occurs when the court is "'left with a definite and firm conviction that a mistake has been committed,' and [the court] may not merely substitute [its] view for that of the fact finder. . . .  [The court] consider[s] whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that

---

[2]  In *Abatie*, this court, sitting en banc, reconsidered its approach to ERISA cases when a plan administrator with discretion to interpret the terms of a benefits plan denies benefits and conflicts of interest or procedural irregularities are involved.  458 F.3d at 959.  There, the plaintiff filed suit in district court under ERISA, arguing that the plan administrator wrongfully denied her life insurance benefits.  *Id.*  Following a bench trial, the district court upheld the plan administrator's decision.  *Id.* at 959, 961.  On appeal, the plaintiff questioned the standard of review the district court applied.  *Id.* at 959.  This court held, in relevant part, that procedural irregularities that occur during a plan administrator's review must "be weighed in deciding whether an administrator's decision was an abuse of discretion," and the court may consider "additional evidence when the irregularities have prevented full development of the administrative record."  *Id.* at 972-73.  Finding that the district court did not consider new evidence outside the administrative record, the court reversed and remanded for further proceedings.  *Id.* at 974.

may be drawn from the facts in the record.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc) and applying the *Hinkson* standard to an ERISA case).  But this court has clarified that the district court's abuse of discretion review in an ERISA case should be informed by consideration of any conflicts of interest or procedural irregularities present in the case.  *Abatie*, 458 F.3d at 967 (9th Cir. 2006).  Specifically, the district court should consider any of the plan administrator's procedural errors or irregularities as a factor in determining whether it abused its discretion.  *Id.* at 972.

This court has repeatedly held "that where the abuse of discretion standard applies in an ERISA benefits denial case, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'"  *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.1999)).[3]  But the

---

[3]    In *Nolan*, Jeanne Nolan filed an ERISA action in the district court after her disability benefits plan denied her application for benefits.  551 F.3d at 1150.  The district court granted summary judgment to the benefits plan, and held that although the benefits plan operated with a conflict of interest, *Abatie* required the court to consider new evidence presented to the district court under an abuse of discretion standard.  *Id.* at 1152.  But this court reversed and remanded the case to the district court, holding, in relevant part, that the traditional summary judgment rules do apply to evidence presented outside the record in ERISA cases.  *Id.* at 1155.

traditional summary judgment standard *does apply* when the district court is considering evidence outside the administrative record to determine whether the plan administrators had conflicts of interest or committed procedural irregularities. *Nolan*, 551 F.3d at 1154-55. This abuse of discretion standard that considers conflicts of interest and procedural irregularities creates a complicated two-stage inquiry at summary judgment.[4]

First, we must determine, viewing the evidence in the light most favorable to Hoffman, whether there was a genuine issue of material fact as to whether the abuse of discretion standard should factor in procedural irregularities committed during the Plan's review. *Nolan*, 551 F.3d at 1154. Next, without viewing the evidence in the light most favorable to Hoffman, we must determine if the Plan abused its discretion (under a potentially more skeptical lens) when it denied Hoffman benefits. *Id.*

III

The district court correctly applied this complex inquiry at every stage. The majority disagrees, and this is where our analyses diverge.

    A. *The district court correctly tempered the abuse of discretion standard to account for the Plan's procedural irregularities*

---

[4] The parties agree that there is no structural conflict of interest in this case. Hoffman asserts that there is a conflict of interest because the Plan's lawyers, from Fox Rothschild, represented the Plan in prior litigation and have continued to advise the Plan regarding litigation with Hoffman ever since. But Hoffman provides no evidence that the lawyers from Fox Rothschild were involved in the decision to deny her benefits or to deny her appeal. As a result, her argument in favor of finding a conflict of interest lacks support from the record.

8

Under *Nolan*, we must first determine whether Hoffman created a genuine issue of material fact as to whether irregularities during the proceedings before the plan should be factored into the abuse of discretion standard. As noted above, we have held that "procedural irregularities" in the ERISA proceedings at the plan level should be weighed as part of the abuse of discretion standard. *Abatie*, 458 F.3d at 972. If an "administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA," and the administrator's actions "fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted." *Id.* at 971-72. However, "[w]hen an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Id.* at 972 (quoting *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1107 (9th Cir. 2003)).

Here, as the district court noted, Hoffman adduced evidence that, when viewed favorably to her, established a triable issue of fact that the Plan failed to provide her with complete copies of the administrative record in a timely fashion during the appeals process, most notably the opinion of its new in-house doctor. On that basis, the district court determined that there was a genuine issue of material

9

fact as to whether there were procedural irregularities and proceeded to apply a "more skeptical" version of the abuse of discretion test to the Plan's motion for summary judgment.

The majority recognizes that the district court correctly held that there was a genuine issue of material fact as to whether there were procedural irregularities during the proceedings before the Plan that should be weighed in determining whether the Plan abused its discretion. The majority holds, however, that because the district court did not specifically mention each piece of evidence Hoffman presented to prove the claimed procedural irregularities in its decision granting summary judgment to the Plan, it must not have considered that evidence. In so doing, the majority imposes a peculiar and unnecessary burden on the district court to name specifically each claimed procedural irregularity. Our court has never required this.[5]

The majority also neglects to mention that the district court went on to find that, viewing all evidence in the light most favorable to Hoffman: (1) the irregularities in the Plan proceedings were relatively minor, (2) the Plan

---

[5]   The majority cites to *Abatie*, 458 F.3d at 959, to support its holding that "[t]he district court's failure to consider all of the alleged procedural defects before determining the level of skepticism was error." However, the court in *Abatie* reversed and remanded to the district court to consider the plaintiff's outside evidence because it did not consider *any* of the outside evidence the plaintiff presented to the district court. *Id.*

10

demonstrated it had engaged in a good-faith exchange of information, and (3) the

Plan's decision was still entitled to substantial deference under *Abatie*.[6] The district

court's decision in this respect was correct.

Many of the irregularities identified by the majority and by Hoffman concern

documents that were not produced by the Plan in a timely manner or evidence that

the Benefits Committee allegedly failed to consider. To begin with, most of

Hoffman's complaints regarding the production of documents and other procedural

---

[6] The majority compounds its error by incorrectly stating that the district court adopted the Plan's proposed findings of facts and conclusions of law "verbatim." To the contrary, the district court granted the Plan's motion for summary judgment on October 12, 2016 in a detailed, well-reasoned order that explained its decision in the court's own words.

The district court then ordered the prevailing party, the Plan, to submit formalized findings of fact and conclusions of law that echoed the district court's own order to be filed in conjunction with the judgment. Thus, the findings of fact and conclusions of law were superfluous to the district court's decision, which it had already articulated in its order granting summary judgment. The Plan submitted the requested findings of fact and conclusions of law on October 26, 2016. Hoffman did not object to the findings of fact and conclusions of law submitted by the Plan. The district court adopted the findings of fact and conclusions of law submitted by the Plan on November 2, 2016 at the same time that it entered judgment in favor of the Plan.

Nothing about the district court's process indicates it was improperly influenced by the views of a party. The district court articulated the basis of its decision independently, then merely requested that the prevailing party ease the district court's workload by formalizing the decision into findings of fact and conclusions of law that could be filed concurrently with the judgment. If Hoffman thought this procedure was improper, she had nearly a month to object. She did not. The majority fails to explain why the district court's conduct in this case should subject its decision to any additional scrutiny or why Hoffman did not waive the issue by failing to object below.

11

irregularities concern the failure of the Plan to produce documents during the discovery process in the district court. For instance, Hoffman asserts that various draft medical reports should have been produced in response to her document requests and points to discrepancies in the Plan's interrogatory responses and requests for attorneys' fees. Of course, the proceedings in the district court took place *after* the Plan proceedings. These arguments are not relevant to the determination of whether there were procedural irregularities during the proceedings *before the Plan*. Additionally, if Hoffman felt that the Plan had violated the discovery rules, she had a remedy: seek relief from the district court. But Hoffman fails even to argue that the Plan failed to comply with any order of the district court regarding discovery in this matter.[7]

When Hoffman's contentions regarding discovery are put aside, two main issues remain. First, Hoffman contends that the Plan did not produce the opinion of its new medical director before the administrative appeal hearing. The Plan appears to concede that the medical report became detached from the rest of the administrative record and was not produced to Hoffman. This is a procedural irregularity, but an inadvertent nondisclosure does not implicate the Plan's attempt

---

[7] Hoffman goes so far as to characterize the district court's decision to rule on the Plan's summary judgment motion, rather than conduct a full bench trial, as a "procedural irregularity." Clearly, the district court's decisions regarding the management of its docket cannot demonstrate that the proceedings before the Plan deserve additional scrutiny.

12

to engage in a good-faith exchange of information. Further, Hoffman does not explain how this non-disclosure prejudiced her in any way on her administrative appeal. Remember: the new doctor's report found her *not* to be disabled.

Second, Hoffman contends that the Plan never considered her tax returns, which she submitted for the Plan's consideration during the administrative appeal process, but were not part of the administrative record. These tax returns demonstrate that Hoffman did not receive income from her work on various film projects during the time she alleges she was disabled. Again, this irregularity appears to have merit, but does not implicate the Plan's good-faith exchange of information. This is particularly true because the Benefits Committee's decision regarding Hoffman's administrative appeal did not rely, in any way, on Hoffman's alleged employment during the time she claimed to be disabled. Instead, the Benefits Committee confined its decision to medical opinions as to Hoffman's physical condition, which have nothing to do with Hoffman's tax returns.

Simply put, the inadvertent failure to produce one document that hurts Hoffman's case and the failure to consider documents that had no bearing on the Plan's ultimate decision are procedural irregularities, but do not support applying a high level of scrutiny to the Plan's decision. As a result, even were I to apply a slightly more skeptical form of the abuse of discretion test to the Plan's decision,

13

bearing the procedural irregularities in mind, I would still afford the Plan broad deference. *See Abatie*, 458 F.3d at 972.

## B. *The Plan did not abuse its discretion by relying on the medical opinions it had solicited*

When the Plan's decision is viewed with the proper level of deference, it becomes clear that the Plan did not abuse its discretion when it terminated Hoffman's benefits. A detailed review of the medical evidence before the Plan demonstrates that the Plan chose between conflicting evidence and its decision was not "illogical, implausible, or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1263.

As discussed above, during the review process, the Plan sent Hoffman's medical records to a medical consulting company. The consulting company obtained the opinion of a board certified orthopedic surgeon, who concluded that Hoffman was not disabled at any point from an orthopedic perspective.[8] The consulting company also obtained the opinion of a board certified psychologist, who concluded that Hoffman was not presently disabled and likely had not been disabled since late 2004. Finally, the consulting company obtained the opinion of a board

---

[8] Hoffman argues insistently that the Plan abused its discretion in relying on these opinions because they were reproduced in reports generated by the consulting companies and, thus, were hearsay. Hoffman cites no authority for the proposition that the rules of evidence apply to ERISA proceedings at the plan level. Hoffman also cites no authority for the proposition that a plan abuses its discretion when it relies on hearsay. As a result, these arguments are meritless.

14

certified neurologist (the "First Plan Neurologist"), who concluded that Hoffman was not disabled at any time from a neurological perspective.

After Hoffman appealed, the Plan sent her medical records, including new documentation that Hoffman provided, to a new consulting company for an additional review. The new consulting company obtained the opinion of a board certified orthopedic surgeon, who opined that Hoffman was not disabled from an orthopedic perspective. The new consulting company also obtained the opinion of a board certified psychologist, who concluded that Hoffman was not disabled from a psychological perspective.

Finally, the new consulting company obtained the opinion of a board licensed neurologist (the "Second Plan Neurologist"). The Second Plan Neurologist opined that Hoffman was disabled. However, the Second Plan Neurologist went on to opine that Hoffman had "no physical neurological restrictions or deficits" and "would be able to work in any position that did not require [Hoffman] to engage in rapid word reading or other speed processing" and that "there are no mentation restrictions as it pertains to [Hoffman's] capacity to work."

Because the Second Plan Neurologist's opinion was inconsistent with the First Plan Neurologist's opinion, and because the Second Plan Neurologist's opinion was arguably internally inconsistent, the Plan sent Hoffman's updated medical records to the First Plan Neurologist to see if the new information changed his opinion. The

15

First Plan Neurologist reiterated his opinion that Hoffman was not disabled from a neurological perspective.[9]

Hoffman was also permitted to submit medical evidence to the Plan. Hoffman submitted letters and reports generated during the relevant time period from no less than eleven medical professionals.[10] Of those letters and reports, only four opine that Hoffman was disabled.[11] Two of those letters were from psychologists, who opined that Hoffman was disabled in 2015. Another set of letters came from Hoffman's treating physician, who opined that Hoffman had been disabled for the entire relevant period of time. Finally, Hoffman directs the Court to the opinion of the Plan's former in-house doctor, who opined, in conjunction with Hoffman's 2008 application to convert her disability pension into an occupational disability pension,

---

[9] Hoffman contends that asking the First Plan Neurologist to opine again violated ERISA because, as we held in the First Appeal, the Plan was required to obtain a new medical opinion during the administrative appeal. But Hoffman's argument contorts ERISA's requirements and this Court's ruling. Although the Plan was required to obtain a second medical opinion from an unrelated doctor on appeal, nothing in ERISA prohibits the Plan from *also* relying on the previous doctor's opinion, provided that the Plan also considers the opinion of a new, qualified medical professional. *See* 29 C.F.R. § 2560.503–1(h)(3)(ii); *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009).

[10] Hoffman also directs the Court to medical opinions from 2002-2004. Although these opinions relate to whether Hoffman was disabled at some point in time, they are not as helpful when determining whether the plan abused its discretion in terminating her pension as of January 1, 2005.

[11] The balance of the reports and letters submitted by Hoffman describe her symptoms, test results, and medical history, but provide no opinion as to whether Hoffman is disabled or able to work.

16

that Hoffman was disabled under the Plan but had not demonstrated that her disability was a result of her work.[12]

Thus, there was conflicting medical evidence before the Plan when it made its final determination regarding Hoffman's benefits. The Plan based its decision regarding Hoffman's appeal exclusively on the medical evidence and did not reference her film work. The Plan's choice to credit the opinions of the doctors the Plan retained to evaluate Hoffman's claim was plainly not an abuse of discretion. In fact, "[i]n the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1473 (9th Cir. 1993), *abrogated on other grounds by Abatie*, 458 F.3d at 973.[13]

Ultimately, the plan was faced with conflicting medical evidence. It had to choose between two competing views, both supported by evidence in the record. Under such circumstances, the Plan's decision to credit the findings of the experts it retained was, almost by definition, not "illogical, implausible, or without support in

---

[12]     This determination was the subject of the First Appeal.
[13]     Hoffman's suggestion that the Plan should have credited the opinions of her treating physician over the opinions of non-treating physicians is contrary to Supreme Court precedent. The Supreme Court has clearly held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

17

inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1263. As a result, the district court was correct to grant the Plan summary judgment.[14]

## IV

Because our precedent requires us to defer to the Plan's judgment with respect to its benefits decisions, and because the Plan plainly did not abuse its discretion in relying on medical evidence in the record, I would AFFIRM the district court in full.

---

[14] The district court also granted the Plan summary judgment on Hoffman's section 502(c) claim, which alleged that the Plan failed to provide her with records from her case in a timely fashion. To sustain a claim under section 502(c), the plaintiff must have a colorable underlying claim for wrongful denial of benefits. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Here, as discussed above, Hoffman does not have a colorable claim for wrongful denial of benefits because the Plan did not abuse its discretion. Consequently, Hoffman's section 502(c) claim also fails.